# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

In re:

| | |
|---|---|
| WORLEY BROTHERS SCRAP IRON & METAL, INC. | Case Number:   14-26318-PJD |
| | Chapter 11 |

_____Debtor._____

## PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. § 1121(a)

### PREAMBLE

Worley Brothers Scrap Iron & Metal, Inc., the debtor and debtor-in-possession (the "Debtor" or "Worley") in the bankruptcy case under Chapter 11 of the Bankruptcy Code that is pending before the United States Bankruptcy Court for the Western District of Tennessee (Case No. 14-26318-PJD) (the "Chapter 11 Case"), hereby submits this Plan of Reorganization of Worley Brothers Scrap Iron & Metal, Inc., pursuant to Section 1121(a) of the Bankruptcy Code, Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

## ARTICLE I
### Background to and Concept of the Plan

1.1     This Plan of Reorganization (the "Plan") reflects a desire of the Debtor to pay all creditors in full (priority, secured and unsecured) and maintain a family business that employs 54 people currently.  The Debtor is a corporation organized and existing pursuant to the laws of the State of Tennessee.  Its principal assets are equipment and inventory including auto parts.  Since commencement of the case Worley has reduced its employees from 81 to 54.  It has also ceased operations of its two locations when it did business as Southside Auto Parts and Worley Auto Parts.

1.2     The Plan calls for Bankruptcy Court approval of this Plan, which proposes to pay all creditors in full.  The Plan assumes that allowed administrative claims will not exceed $100,000.00. It is anticipated that confirmation will occur on or about February 18, 2015.

## ARTICLE II
### Provisions for Payment of Allowed Administrative Claims;
### Administrative Claims Bar Date;
### Provisions for Payment of Allowed Priority Tax Claims

2.1     Administrative Claims and Priority Tax Claims are Not Classified in this Plan. The treatment of and consideration to be received by holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article II of the  Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims.   The Debtor's

obligations with respect to such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.2    <u>Administrative Claims Bar Date</u>.  Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served on counsel for the Debtor and the United States Trustee no later than thirty (30) days after the Effective Date.  Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the  Plan on account thereof.  The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Confirmation Date.

2.3    <u>Treatment of Administrative Claims</u>.  Allowed Administrative Claims are not impaired by the Plan.  Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, with respect to such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to their terms, be paid when otherwise due.  The total amount of Allowed Claims in this Class is not expected to exceed $100,000.

2.4    <u>Treatment of Priority Tax Claims</u>.  There are numerous Priority Tax Claims. Allowed Priority Tax Claims are not impaired by the Plan. Each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtor, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of (i) Consummation, (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (iii) as soon thereafter as is practicable, or (b) equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate equal to 6.5%, over a period through the sixth (6th) anniversary of the date of assessment of such Allowed Priority Tax Claim, or upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim.

2.5    <u>United States Trustee Fees</u>.  All fees of the United States Trustee due and payable under 28 U.S.C. § 1930 will be paid on the Effective Date of this plan without application or further order of the Court.

**<u>ARTICLE III</u>**
**Designation of and Provisions for**
**Treatment of Claims and Interest Holders**

A Claim or Interest holder is included in a particular Class or designation only to the extent that such Claim or Interest holder qualifies within the description of that Class or designation, and is in a different class or designation to the extent that the remainder of such Claim or Interest holder qualifies within the description of such different Class or designation.

The Claims against and interest holders in the Debtor are designated, and shall be treated, as follows:

      3.1    <u>Class 1 – Allowed Other Priority Claims</u>.  There are no known Other Priority Claims.  To the extent that any Other Priority Claims are presented and are determined to be Allowed Claims entitled to priority in payment pursuant to §§ 507(a)(2) through 507(a)(7) of the Bankruptcy Code, such Claims will comprise Class 1.  Except to the extent the holder of an Other Priority Claim that is an Allowed Claim agrees otherwise, each holder of an Other Priority Claim shall be paid, with respect to such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Other Priority Claim that is an Allowed Claim) as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim.  The Debtor estimates that the total amount of Other Priority Claims, if any, will be *de minimis* on the Effective Date.  The Debtor expects to have sufficient funds to pay all Other Priority Claims that become Allowed Claims in full on the Effective Date.

      The Claims in Class 1 are <u>not</u> impaired by the Plan.  Solicitation of acceptances from holders of Other Priority Claims is not required and is not being undertaken.  Holders of Other Priority Claims are deemed to accept the Plan.

      3.2    <u>Class 2 – Allowed Secured Claim of First Bank</u>

| | |
|---|---|
| Description - | The allowed Secured Claim of First Bank consists of five separate secured notes. The allowed Secured Claim is secured by a properly perfected, first priority security interest in essentially all of Debtor's personal property including equipment and inventory.  The total allowed claim is $2,043,625.00. |
| Treatment - | The allowed Secured Claim of First Bank shall be paid consolidated into two payment streams. The first claim will be allowed at $1,537,150 and be paid in 72 equal installments of $23,406 beginning January 15, 2015. The second claim will be in the principal amount of $500,000 and be paid in equal monthly installments of $8,500 beginning the seventh month following the Effective Date. Debtor anticipates selling excess and non-critical equipment securing this claim and any proceeds shall be applied to principal reduction.  The terms and conditions of the Consent Order Granting Adequate Protection and Conditionally Denying FirstBank Relief from the Automatic Stay [Doc. __] are hereby incorporated into the Plan. |
| Status - | Impaired.  Entitled to vote for or against the Plan. |
| Allowed Amount - | $1,962,150.00 plus interest, attorneys' fees and expenses. |

### 3.3    Class 3 – Allowed Secured Claims of Wells Fargo Equipment Finance Company

Description -          The allowed Secured Claim of Wells Fargo Equipment Finance Company is secured by a properly perfected, first priority security interest in a Drake Hammer Mill Shredder.

Treatment -          The allowed Secured Claim of Wells Fargo Equipment Finance Company shall be paid in full over a term of six (6) years. The allowed Secured Claim shall accrue interest at 4.79% per annum and be paid at $20,000 per month. The terms and conditions of the Agreed Order Conditionally Denying Wells Fargo Equipment Finance Inc.'s Motion to Terminate Automatic Stay and Resolving the Debtor's and FirstBank's Objections Thereto [Doc. __] are hereby incorporated into the Plan.

Status -          Impaired. Entitled to vote for or against the Plan.

Allowed Amount -          $1,743,053.00 plus interest, attorneys' fees and expenses.

### 3.4    Class 4 – Allowed Secured Claim of Wells Fargo Bank

Description -          The allowed Secured Claim of Wells Fargo Bank is secured by a properly perfected, second priority security interest in one Caterpillar 320D, one Caterpillar 320CL and Liebherr R944 and a blanket second priority security interest on all other assets.

Treatment -          The allowed Secured Claim of Wells Fargo Bank shall be paid in full over a term of six (6) years. The allowed Secured Claim shall accrue interest at 4% per annum and be paid at $4,250 per month beginning 180 days after the Effective Date.

Status -          Impaired. Entitled to vote for or against the Plan.

Allowed Amount -          $251,249.00

### 3.5    Class 5- Allowed Secured Claim of TCF Equipment Finance

Description -          The allowed Secured Claim of TCF Equipment Finance is secured by four separate contracts on equipment (Two Leibherr Excavators and two Linkbelt Excavators).

Treatment -          The allowed Secured Claim of TCF Equipment Finance shall be paid in divided into two payment streams. The two contracts secured by Contracts 001-0536759-501 and 502 will accrue interest at 4% per annum and amortized over 12 months. It will be paid in equal monthly installments of $1,255. The second payment stream is secured by

4

Contracts 001-0536759-503 and 504 and will accrue interest at 4% per annum and amortized over 36 months. It will be paid in equal monthly installments of $4,950 each.

Status -                    Impaired.  Entitled to vote for or against the Plan.

Allowed Amount -            $180,396.00

### 3.6    Class 6 – Allowed Secured Claim of Malvern National Bank

Description -               The allowed Secured Claim of Malvern National Bank is bifurcated into secured and unsecured. It is secured by a properly perfected security interest in scales and scrap operating system software.

Treatment -                 The allowed Secured Claim of Malvern National Bank shall be paid in full over a term of 60 months.  The allowed Secured Claim shall accrue interest at 4% per annum and be paid at $2,500.00.

Status -                    Impaired.  Entitled to vote for or against the Plan.

Allowed Amount -            $135,000.00 Secured ($82,980.00 as Unsecured, Class 11)

### 3.7    Class 7 – Allowed Secured Claims of Capital One Equipment Finance

Description -               The allowed Secured Claim of Capital One Equipment finance is secured by a properly perfected, first priority security interest in one AL-Jon Portable Model 580CL car logger/baler.

Treatment -                 The allowed Secured Claim of Capital One shall be paid in full over a term of 72 months.  The allowed Secured Claim shall accrue interest at 4% per annum and be paid at $3,525.00 per month.

Status -                    Impaired.  Entitled to vote for or against the Plan

Allowed Amount -            $219,102.00

### 3.8    Class 8- Allowed Secured Claim of Belz Invesment, Inc. and LMF, Inc.

Description -               The Allowed Secured Claim of Belz Investment, Inc. and LMF, Inc. Claim is secured by a properly perfected, first priority deed of trust interest in real property located at 1363 Thomas, Memphis, Tennessee.

Treatment -                 Belz Investment, Inc. and LMF, Inc.'s claim shall be fully secured.  It will accrue interest at the rate of 4% per annum and be amortized over 72 months. It will be paid in equal monthly installments of $1,875.00.

Status -                    Impaired.  Entitled to vote for or against the Plan

5

Allowed Amount -        $118,635.00

    3.9     Class 9-Allowed Secured Claim of Caterpillar Financial Services Corp.

Description -            The Allowed Caterpillar Financial Services Corp. Claim is secured by a
                        properly perfected, first priority security interest in one Caterpillar small
                        wheel loader.

Treatment -             CFSC's claim shall be fully secured.  It will accrue interest at the rate of
                        4% per annum and be amortized over 72 months.  It will be paid in equal
                        monthly installments of $1,575.00.

Status -                Impaired.  Entitled to vote for or against the Plan

Allowed Amount -        $100,757.00

    3.10    Class 10-Allowed Secured Claim of OmniSource

Description -            Secured Claim of OmniSource is secured by a judgment lien against
                        Debtor's real property.

Treatment -             OmniSource's claim is undersecured and will be treated as a Class 11
                        claim.

Status -                Impaired.  Entitled to vote for or against the Plan

Allowed Amount -        $130,000 in Class 11

    3.11    Class 11-Allowed General Unsecured Claims

Description -            The total of general unsecured claims listed in the Schedules is
                        approximately $1,324,800.00.

                        Non-priority unsecured creditors listed in the Debtor's Schedules will be
                        paid, even if they have not filed a claim, so long as their debt was not
                        indicated by the Debtor to be disputed, contingent, or unliquidated.
                        Class 11 shall consist of Allowed General Unsecured Claims not
                        included in any other Class, including, without limitation claim for the
                        following:  (i) Claims for goods and services delivered prior to the
                        Petition Date; (ii) any unsecured deficiency claim of a Claimant holding
                        a Secured Claim; (iii) any Claim arising from a judgment against a
                        Person in any Avoidance Action (iv) Claims arising out of the rejection
                        of any executory contract; and (v) all Allowed Claims not included in any
                        other class and not secured by a charge against or interest in property in
                        which the Debtor's estate has an interest.

6

Treatment -               Class 11 claims will be paid in full over a ten (10) year period. Monthly installments of $13, 800.00 will commence on the 25th month after the Effective Date.

Status -                    Impaired.  Entitled to vote for or against the Plan

Allowed Amount -    Unknown

       3.12   <u>Class 12-Allowed Interests</u>

Description -           Allowed interests

Treatment -               Johnny Worley and Lonny Worley will retain their ownership interests.

Status -                    Not impaired. Not entitled to vote for or against the Plan.

Allowed Amount -    None

## ARTICLE IV
## Execution of the Plan

    4.1   <u>Management of the Business</u>.  Johnny Worley and Lonny Worley will continue to manage the business affairs.  A new cash management system will be implemented to better track and manage the Reorganized Debtor's cash flow.

    4.2   <u>First Installment</u>.  Pursuant to prior court order the Debtor began commencing payments in January 2015.

## ARTICLE V
## Unexpired Leases and Executory Contracts

    5.1   Each contract of the Debtor listed on Schedule 5.1 to this Plan shall be assumed as of the Effective Date unless the Debtor, prior to Confirmation, notifies the Court and the other parties to such contract that the contract will be rejected, and the Confirmation Order shall constitute an order pursuant to § 365 of the Bankruptcy Code authorizing the approval of the assumption of such agreements as of the Effective Date.  Any contract or unexpired lease not assumed either pursuant to this Article or by the Confirmation Order, pursuant to Section 365 of the Bankruptcy Code shall be deemed assumed.

    5.2   The Confirmation Order will provide that any contract assumed pursuant to this Article or previously assumed pursuant to § 365 of the Bankruptcy Code will be in force upon cure of any defaults requiring cure under § 365 of the Bankruptcy Code.

5.3     Except to the extent a prior order of the Bankruptcy Court provided for an earlier date, in which case such earlier date shall control, all proofs of claim with respect to Claims arising from the Debtor's rejection of unexpired leases and other executory contracts shall be filed with the Bankruptcy Court within thirty (30) days after the date of service of notice of entry of an order of the Bankruptcy Court approving such rejection and requiring the filing of a proof of claim in connection therewith, including the Confirmation Order.  Any Claims not filed within such times shall be released, discharged, and forever barred from assertion against the Estate and the Reorganized Debtor.

## ARTICLE VI
### Acceptance or Rejection of This Plan;
### Effect of Rejection by One or More Classes

6.1     <u>Impaired Classes to Vote</u>.  Except as otherwise required by the Bankruptcy Code or the Bankruptcy Court, any holder of a Claim that is impaired under this  Plan is entitled to vote to accept or reject this  Plan if, at any time prior to the Voting Deadline, (i) its Claim has been Allowed, (ii) its Claim has been temporarily allowed for voting purposes only by order of the Bankruptcy Court pursuant to Bankruptcy Rule 3018 (in which case such Claim may be voted in such temporarily allowed amount), (iii) its Claim has been scheduled by the Debtor (but only if such Claim is not scheduled as disputed, contingent, or unliquidated) and no objection to such Claim has been filed, or (iv) it has filed a proof of claim on or before the applicable bar date (or such later date as the Bankruptcy Court may have established with respect to any particular Claim, but not later than the date of the order approving the Disclosure Statement accompanying this  Plan), and such Claim is not a Disputed Claim.  Notwithstanding the foregoing, a holder of a Disputed Claim which has not been temporarily allowed as provided above may nevertheless vote such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated, and undisputed in the Schedules.

Holders of Claims in Classes 2 through 11 are entitled to vote on the Plan.

6.2     <u>Acceptance By Class of Creditors</u>.  A class of Creditors shall have accepted this Plan if this Plan is accepted by at least two thirds (2/3) in amount and more than one half (1/2) in number of the Allowed Claims of such Class that have voted and either accepted or rejected this Plan.

6.3     <u>Cramdown</u>.  In the event that one or more classes of impaired Claims does not accept or is deemed not to have accepted this  Plan, the Debtor requests that the Bankruptcy Court confirm this  Plan in accordance with § 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to amend the Plan, if necessary, in order to satisfy the requirements of Section 1129(b) of the Bankruptcy Code.

## ARTICLE VII
### Procedures for Resolving
### Disputed Claims and Avoidance Actions

7.1     <u>Filing of Objections to Claims</u>.  Following the Effective Date, the Reorganized Debtor shall be authorized to object to Claims, or to succeed or otherwise join any objection filed

by the Debtor prior to the Effective Date, so as to have the Bankruptcy Court determine the amounts to be allowed, if any, of such Claims and thus paid pursuant to the Plan.  Objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of such Claims no later than one hundred and twenty (120) days after the Effective Date; provided, however, that this deadline may be extended by the Bankruptcy Court upon the entry of an order by it extending such deadline.  An objection to the allowance of a Claim by the Reorganized Debtor must be filed with the Bankruptcy Court and served upon the holder of the subject Claim(s) and all parties who have requested notice in this Chapter 11 Case.

Notwithstanding the foregoing, unless an order of the Bankruptcy Court specifically provides for a later date, any proof of claim for pre-petition debts of the Debtor filed after the Claims Bar Date shall be automatically disallowed in full as a late-filed claim, without any action by the Reorganized Debtor necessary, unless and until the party filing such Claim obtains (i) the written consent of the Reorganized Debtor to file such Claim late, or (ii) approval from the Bankruptcy Court upon notice to the Reorganized Debtor that permits the late filing of the Claim, in which event, the Reorganized Debtor shall have one hundred and twenty (120) days from the date of such written consent or order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtor.

7.2    Prosecutions of Objections to Claims.  Prior to the Effective Date, the Debtor shall litigate to judgment, propose settlements of, or withdraw objections to such Disputed Claims asserted against it as the Debtor may choose.  From and after the Effective Date, the Reorganized Debtor shall litigate to judgment, propose settlements of, or withdraw objections to all Disputed Claims.  Prior to the expiration of thirty (30) days from the date of service of any such objection to Claims, the Claimant(s) whose Claim(s) was the subject of the objection must file a response to the objection with the Bankruptcy Court and serve the response upon the Reorganized Debtor.  If a Claimant(s) whose Claim(s) was the subject of the objection fails to file and serve its response to the objection within the 30-day response deadline, the Bankruptcy Court may grant the relief requested in the objection against the non-responding Claimant(s) without further notice or hearing.  All proposed settlements of Disputed Claims shall be subject to the approval of the Bankruptcy Court after notice and opportunity for a hearing (as that term is used in Section 102(1) of the Bankruptcy Code).

7.3    Avoidance Actions.  The Debtor specifically reserves and retains the right to bring Avoidance Actions following Confirmation of the Plan.  The Debtor and the Reorganized Debtor shall retain the sole right to commence, continue, or settle any Avoidance Action, including any Avoidance Action brought by the Debtor prior to the Effective Date that remains unsettled as of the Effective Date.  All proposed settlements of Avoidance Actions where the settlement amount of the claim in question is greater than $5,000 shall be subject to the approval of the Bankruptcy Court after notice and opportunity for a hearing (as that term is used in § 102(1) of the Bankruptcy Code).  All proposed settlements of Avoidance Actions where the settlement amount of the claim in such Avoidance Action is $5,000 or less may be entered into by the Reorganized Debtor without further notice, hearing, or order of the Court.

The Debtor has not conducted an in-depth analysis of the pre-petition transfers that may be subject to avoidance pursuant to §§ 542, 543, 544, 545, 546, 547, 548, 549, 550, and/ or 551 of the Bankruptcy Code.  In general, transfers made to creditors within 90 days of the Petition

Date may be subject to avoidance.  Other transfers that may be avoidable include payments to insiders that were made within one year before the Petition Date.  Lists of transfers made within the applicable time periods appear in the Debtor's Statement of Financial Affairs filed in the Debtor's case on August 15, 2014.

**ARTICLE VIII**
**Distributions and Treatment of Disputed Claims**

8.1     <u>Disbursing Agent</u>.  Except as otherwise provided in the Plan, the Reorganized Debtor, or an agent employed by the Reorganized Debtor, shall serve as the "disbursing agent" and shall make all distributions provided for under the Plan.

8.2     <u>Making of Distributions and Payments</u>.  The Reorganized Debtor shall make the payments and distributions expressly required with respect to Allowed Administrative Claims, Allowed Priority Tax Claims, Other Priority Claims that are Allowed Claims, Allowed Secured Claims and Allowed General Unsecured Claims at such time or times as are provided for in Article III of the Plan.  The Reorganized Debtor shall make the distributions expressly required to be made with respect to Allowed Claims at such times or times as are provided for in Article III of the Plan.

8.3     <u>Payment or Distribution Upon Resolution of Disputed Claims</u>.  Except as the Debtor or the Reorganized Debtor, as applicable, may otherwise agree with respect to any Disputed Claim, no payments or distributions shall be made with respect to any portion of a Disputed Claim unless and until (a) all objections to such Disputed Claim have been resolved or determined by a Final Order of the Bankruptcy Court, or (b) the Bankruptcy Court shall have entered an order treating any portion of a Disputed Claim as an Allowed Claim.  Payments and distributions to each holder of a Disputed Claim to the extent that it ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the class of Claims to which such Allowed Claim belongs.  A Disputed Claim that is estimated for purposes of allowance and distribution pursuant to § 502(c) of the Bankruptcy Code and which is estimated and Allowed at a fixed amount by Final Order of the Bankruptcy Court shall thereupon be an Allowed Claim for all purposes in the amount so estimated and Allowed.

8.4     <u>Delivery of Distributions; Unclaimed Property</u>.  Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed or if the Reorganized Debtor has been notified of a change of address).  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtor is notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest (except to the extent that such missed distributions have become unclaimed property).  All claims for undeliverable distributions shall be made on or before the earlier of the second (2nd) anniversary of the applicable Distribution Date and the Final Distribution Date, and after such date, such undeliverable distributions shall be unclaimed property.  All unclaimed property attributable to any General Unsecured Claim shall revert to the Reorganized Debtor, and the claim of any holder with respect to such unclaimed property shall be discharged and forever barred and, in the case of a Claim, shall no longer be deemed an Allowed Claim.

10

Checks issued by the Reorganized Debtor with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissue of any check shall be made, in writing, to the Reorganized Debtor by the record holder of the Allowed Claim with respect to which such check was originally issued.  Any funds with respect to such a voided check shall be deemed as undeliverable or unclaimed distribution and shall revert to the Reorganized Debtor.

8.5    <u>Method of Payment</u>.  Payments of Cash required pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank at the election of the Person making such payment.

8.6    <u>Payment Dates</u>.  Whenever any payment or distribution to be made under this Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

8.7    <u>Rounding</u>.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one half cent being rounded up to the nearest whole cent.

8.8    <u>Payments of Less Than Five (5) Dollars</u>.  If a Cash payment otherwise provided for by this  Plan with respect to an Allowed Claim would be less than five dollars ($5.00) (whether in the aggregate or on any Distribution Date provided for in this  Plan), notwithstanding any contrary provision of this  Plan, the Reorganized Debtor shall not be required to make such payment.

8.9    <u>Setoff</u>.  The Reorganized Debtor may, but shall not be required to, setoff against any Claim (and the distributions to be made pursuant to this Plan with respect to such Claim), claims of any nature whatsoever that the Debtor, its Estate, or the Reorganized Debtor may have, against the holder of such Claim.  Notwithstanding the foregoing, the failure to effect such a setoff will not constitute a waiver or release by the Reorganized Debtor of any such claim against such holder.

**ARTICLE IX**
**Means for Implementing the Plan**

9.1    The Debtor has sufficient Cash on hand to provide for the treatment of any Other Priority Claims that are Allowed Claims as depicted in Article III above.  The Reorganized Debtor shall pay Allowed Administrative Claims and Allowed Priority Tax Claims and U.S. Trustee Fees upon the Effective Date.

**ARTICLE X**
**Effects of Confirmation**

10.1    <u>Discharge of Debtor</u>.  The consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, discharge, release, and termination of all Claims of any nature whatsoever against the Estate or the Debtor.  In addition, except as otherwise provided herein, upon the Effective Date, the Debtor shall be deemed discharged and released pursuant to § 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including but not

11

limited to demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted this Plan.

The Confirmation Order shall be a judicial determination of discharge and termination of all liabilities of and all Claims against the Estate and Debtor and all liens on the Property and security interests in the Property, except as otherwise specifically provided in this Plan. On the Confirmation Date, as to every discharged Claim and other debt of the Debtor, the holder of such Claim or other debt of the Debtor shall be permanently enjoined and precluded from asserting against the Reorganized Debtor, or against their assets or properties or any transferee thereof, any other or further Claim or other debt of the Debtor based upon any document, instrument, or act, omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date except as expressly set forth in this Plan. In the event that, after the Confirmation Date, any Person asserts, against the Reorganized Debtor or any of their subsidiaries or affiliates, any right to payment or equitable remedy for breach of performance which gives rise to a right of payment, which right was not asserted prior to the Confirmation Date but is based on any act, fact, event, occurrence, or omission, by or relating to the Debtor, as the Debtor existed before the Confirmation Date, and in the further event that such right is determined by a court of competent jurisdiction not to have been discharged pursuant to the provisions of Bankruptcy Code § 1141 and this Plan, and that such right may be asserted against the Reorganized Debtor, then, in such circumstances the holder of such right shall be entitled to receive from the Reorganized Debtor value equivalent to the value such holder would have received if such right had been asserted against the Debtor before the Confirmation Date and only to the extent such right would have been allowed or allowable as a Claim. Nothing in this Section 10.1 shall have the effect of excepting from discharge any Claim that is or would be discharged pursuant to Bankruptcy Code § 1141 or this Plan.

Pending substantial Consummation of this Plan, the stay imposed by § 362 of the Bankruptcy Code will remain effective.

10.2   Cancellation of Certain Existing Securities and Agreements.   On the Effective Date, except as otherwise provided in this Plan, (i) any and all notes, documents, agreements or other evidence of indebtedness underlying the Priority Claims, Secured Claims, and General Unsecured Claims shall be cancelled and shall be null and void, and the obligations thereunder shall be discharged. The holder of any such documents cancelled pursuant to this provision shall have no rights arising from or relating to such documents, including, without limitation, any subordination or subrogation rights, except the right to receive distributions provided for in the Plan.

10.3   Release of Certain Claims and Actions.   As of and on the Effective Date, the Debtor, its Estate, and all Persons or entities who have held, hold, or may hold Claims against the Debtor and any of its successors, assigns, or representatives shall be deemed to have waived, released, and discharged all rights or claims, whether based upon tort, contract or otherwise, which they possessed or may possess prior to the Effective Date against the Debtor, its officers, directors, employees, agents, representatives, and attorneys and any of their successors or

assigns, except as otherwise provided for in the  Plan (including the documents filed as Schedules to the  Plan) or the Confirmation Order; <u>provided</u>, <u>however</u>, that the foregoing release shall not apply to performance or nonperformance under the  Plan or related instruments, securities, agreements, or documents, or to any action or omission that constitutes actual fraud or criminal behavior.

The Confirmation Order shall contain a permanent injunction to effectuate the releases granted in this Section 10.3.

10.4    <u>Exculpation</u>.  Except as otherwise provided in the  Plan, to the fullest extent permitted by Section 1125(e) of the Bankruptcy Code, the Debtor, the Reorganized Debtor, and their respective present and former partners, officers, directors, employees, representatives, counsel, or agents shall be deemed released by each of them against the other and by the holders of Claims and Partner Interests and from any and all claims, obligations, rights, causes of action, and liabilities for any act or omission in connection with, or arising out of, the Chapter 11 Case, including, without limiting the generality of the foregoing, the Disclosure Statement, the pursuit and approval of the Disclosure Statement, the pursuit of Confirmation of the  Plan, the Consummation of the  Plan or the administration of the  Plan or the property to be distributed under the  Plan, except for willful misconduct or gross negligence, and all such Persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the  Plan and under the Bankruptcy Code.

10.5    <u>Exemption from Certain Taxes</u>.  To the full extent allowed pursuant to § 1146(c) of the Bankruptcy Code, the consummation of the transactions contemplated by this  Plan shall not subject the Debtor or the Reorganized Debtor to any state or local stamp tax or similar tax.

10.6    <u>Re-vesting of Assets; No Further Supervision</u>.  The assets of the Debtor and all property of the Estate shall be preserved and re-vest in the Reorganized Debtor, in each case free and clear of all Claims and Partner Interests, but subject to the obligations of the Reorganized Debtor as specifically set forth in this  Plan.  This Plan does not contain any restrictions or prohibitions on the conduct of the business of the Reorganized Debtor.  The Reorganized Debtor may use, operate and deal with their assets, and may conduct and change its business, without any supervision by the Bankruptcy Court or the United States Trustee, and free of any restrictions imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Chapter 11 Cases.

10.7    <u>Authority to Implement</u>.  The Debtor and the Reorganized Debtor are hereby authorized to take all necessary steps and perform all necessary acts to consummate the terms and conditions of this Plan.

10.8    <u>Injunction</u>.  Provided that the Effective Date occurs, the entry of the Confirmation Order shall permanently enjoin all Persons that have held, currently hold, or may in the future hold a Claim or other debt or liability against the Estate from taking any of the following actions on account of such Claim:  (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtor, the Estate, or the Reorganized Debtor; (b) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order

against the Debtor, the Estate, or the Reorganized Debtor; (c) creating, perfecting, or enforcing in any manner directly or indirectly, any lien, charge, or encumbrance of any kind against the Debtor, the Estate, or the Reorganized Debtor; and (d) proceeding in any manner in any place whatsoever against the Debtor, the Estate, or the Reorganized Debtor, funds, or reserves held or maintained by any of the aforementioned entities pursuant to this Plan, in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan.

Holders of Claims shall <u>not</u>, under any circumstances, be entitled to specific performance or other injunctive, equitable, or other prospective relief.

## <u>ARTICLE XI</u>
## Conditions Precedent

11.1   <u>Conditions Precedent to Confirmation</u>.  The Plan shall not be confirmed unless and until the Bankruptcy Court has entered the Confirmation Order in a form and substance satisfactory to the Debtor and until the specific conditions set out below are satisfied.

11.2   <u>Effective Date</u>.  .  The Effective Date shall occur eleven (11) days after the Confirmation Order has been entered, without any modifications or alterations, and no stay of the Confirmation Order shall be in effect.

11.3   <u>Notice of the Effective Date</u>.  On or before ten (10) Business Days after the Effective Date, the Reorganized Debtor shall mail (or cause to be mailed) to all parties in interest in the Chapter 11 Case a form of notice that informs all holders of Claims of the (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; (c) assumption of the Assumed Agreement(s) pursuant to the Plan; (d) rejection of all other executory contracts not assumed pursuant to the Plan, as well as the deadline for the filing of Claims arising from such rejection; (e) procedures for changing an address of record pursuant to this Plan; and (f) such other matters as the Debtor deems to be appropriate.

11.4   <u>Non-Occurrence of the Effective Date</u>.  If the Confirmation Order is entered but the Effective Date does not occur within ninety (90) days thereafter, unless otherwise ordered by the Bankruptcy Court, (a) the Confirmation Order shall be deemed vacated; (b) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (c) the Chapter 11 Case will continue as if confirmation of the Plan had not occurred; and (d) the Plan will be of no further force and effect, with the result that the Debtor and other parties in interest will be returned to the same position as if confirmation had not occurred.  The failure of the Effective Date to occur shall not affect the validity of any order entered in the Chapter 11 Case other than the Confirmation Order.

11.5   <u>Consummation</u>.  Consummation of this Plan shall occur upon the Effective Date.

## <u>ARTICLE XII</u>
## Retention of Jurisdiction

From and after the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Case for the following purposes:

(a)     To determine any and all objections to the allowance of Claims;

(b)     To determine any and all applications for the rejection, assumption, or assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Reorganized Debtor is a party or with respect to which the Reorganized Debtor may be liable, and to hear and determine, and if necessary, to liquidate any and all Claims arising therefrom;

(c)     To determine any and all applications for the determination of any priority of any Claim including Claims arising from any event that occurred prior to the Petition Date or from the Petition Date through the Effective Date and for payment of any alleged Administrative Claim, Priority Tax Claim, Other Priority Claim, Secured Claim, General Unsecured Claim, or Undersecured Claim;

(d)     To determine any and all applications, motions, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date or filed thereafter;

(e)     To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or Consummation of this  Plan or in connection with the obligations of the Reorganized Debtor under this  Plan, and to enter such orders as may be necessary or appropriate to implement any distributions to holders of Allowed Claims;

(f)     To consider any modification, remedy any defect or omission, or reconcile any inconsistency in this Plan, the Forbearance Agreement, or any order of the Bankruptcy Court, including the Confirmation Order, all to the extent authorized by the Bankruptcy Code;

(g)     To issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(h)     To determine such other matters as may be set forth in the Confirmation Order, or as may arise in connection with this Plan or the Confirmation Order;

(i)     To hear and determine any claim or controversy of any nature arising from or in connection with any agreement made a part of this  Plan and to enter such orders as may be appropriate to enforce, modify, interpret, or effectuate such agreements;

(j)     To determine any suit or proceeding brought by the Reorganized Debtor or its assignee, on behalf of the Estate, to (a) recover property under §§ 542, 543 or 553 of the Bankruptcy Code or to avoid any transfer or obligation under §§ 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, or (b) by the Reorganized Debtor to otherwise collect or recover on account of any claim or cause of action that the Reorganized Debtor or the Estate may have (provided that the Bankruptcy Court's jurisdiction with respect to such matters shall be nonexclusive);

15

(k)  To consider and act on the compromise and settlement of any Claim against or cause of action by or against the Estate;

(l)  To estimate Claims pursuant to § 502(c) of the Bankruptcy Code;

(m)  To hear and determine any dispute or controversy relating to any Allowed Claim or any Claim alleged or asserted by any Person to be an Allowed Claim;

(n)  To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed to the Professionals under the Bankruptcy Code or this Plan;

(o)  To administer and enforce the injunctions contained in this Plan, and any related injunction or decree contained in the Confirmation Order; and

(p)  To hear and determine any other matter related hereto and not inconsistent with the Bankruptcy Code.

## ARTICLE XIII
### Miscellaneous Provisions

13.1  <u>Modification of Payment Terms</u>.  The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the written consent of the Creditor whose Allowed Claim treatment is being adversely affected.

13.2  <u>Filing of Additional Documents</u>.  On or before the Effective Date, the Debtor shall file with the Bankruptcy Court such agreements and other documents, if any, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and the other agreements referred to herein.

13.3  <u>Compliance with Tax Requirements</u>.  In connection with this Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements.

13.4  <u>Setoffs</u>.  The Reorganized Debtor may (but shall not be required to) if it is in the best interests of the Estate, setoff or recoup against any Claim claims of any nature whatsoever that the Estate may have against the holder of such Claim, to the extent such claim may be setoff or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor or the Estate of any such claim that it may have against such holder.

13.5  <u>Retiree Benefits</u>.  To the extent the Debtor provides any benefits to retirees, such benefits shall continue from and immediately after the Effective Date at the levels established pursuant to § 1114(e)(1)(B) or (g) of the Bankruptcy Code, at any time prior to the Confirmation Date, to the extent that the Debtor has obligated itself to provide retiree benefits at such levels.

The Reorganized Debtor reserves the rights to modify, amend, freeze, or terminate such Retiree Benefits to the full extent permitted by law.

13.6    Payment of Certain Professional Fees/Expenses.   The Reorganized Debtor shall assume responsibility for the payment of all fees and expenses of Professionals retained by the Estate and accruing after the Effective Date.

13.7    Section Headings.   The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

13.8    Waiver.   The Debtor reserves the right, in its sole discretion, to waive any provision of this Plan to the extent such provision is for the sole benefit of the Debtor and the Estate.

13.9    Notices.   Except as otherwise provided in the Bankruptcy Code, any notice required or permitted to be provided under the  Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

> If to the Debtor:
>
> > Johnny Worley
> > Worley Brothers Scrap Iron & Metal, Inc.
> > 1554 Thomas Street
> > Memphis, Tennessee 38107
>
> With a copy to:
>
> > Steven N. Douglass, Esq.
> > Harris Shelton Hanover Walsh, PLLC
> > 40 S. Main Street, Suite 2700
> > Memphis, Tennessee 38103

13.10   Severability.   If prior to or at the time of Confirmation, the Bankruptcy Court holds that any term or provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.   In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the  Plan may, at the option of the Debtor, remain in full force and effect and not be deemed affected.   However, the Debtor reserves the right not to proceed to Confirmation or Consummation of the Plan if any such ruling occurs.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.11   Plan Controls.   To the extent the   Plan is inconsistent with the Disclosure Statement or any other document, agreement, pleading, or understanding, the provisions of this Plan shall control; provided, however, that the Confirmation Order shall control to the extent there is any inconsistency between the  Plan and the Confirmation Order.

13.12   Reservation of Rights.   If the Plan is not confirmed by the Bankruptcy Court or any other Court of competent jurisdiction for any reason, the rights of all parties in interest in this Chapter 11 Case are and shall be reserved in full.   Any concession reflected or provision contained herein, is made for the purposes of the Plan only, and if the Plan does not become effective, no party in interest in this Chapter 11 Case shall be bound or deemed prejudiced by any such concession.

13.13   Governing Law.   Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Tennessee.

13.14   Exemption from Transfer Taxes.   Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or partnership securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax or other similar tax.

13.15   Amendment of Plan.   This Plan may be amended by the Debtor as provided for in § 1127 of the Bankruptcy Code.

13.16   Revocation of Plan.   The Debtor reserves the right to revoke and withdraw this Plan prior to entry of the Confirmation Order.   If the Debtor revokes or withdraws this Plan, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Estate or any other Person or to prejudice in any manner the rights of the Debtor, or any Person in any further proceedings involving the Debtor.

13.17   Implementation.   The Debtor and the Reorganized Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan, including, without limitation, any transaction contemplated by the Disclosure Statement as approved by the Bankruptcy Court.   Nothing contained in this Section shall be construed to prohibit, limit, restrict, or condition the Debtor's authority in any lawful manner to sell or otherwise dispose of any other assets.

13.18   Trust Indenture.   Unless specifically addressed by this Plan or modified by the terms of the Forbearance Agreement, the terms of the Indenture shall remain unaffected by confirmation of this Plan.

**ARTICLE XIV**
**Definitions**

A.      As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

14.1    <u>Administrative Claim</u>.  Any cost or expense of administration of the Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) Allowed under § 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently.   Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtor's business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business(as) as a debtor in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtor as debtor in possession, excluding obligations under assumed executory contracts and unexpired leases that are not cure payments, (iv) obligations pursuant to executory contracts assumed by the Debtor pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by § 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under § 1930 of Title 28, United States Code, and (ix) any fees or charges assessed against the Estate under chapter 123 of Title 28, United States Code.

14.2    <u>Administrative Claims Bar Date</u>.  The date thirty (30) days after the Effective Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all requests for allowance of Administrative Claims must be filed with the Bankruptcy Court.  The Administrative Claims Bar Date shall <u>not</u> apply to fees and expenses of Professionals incurred after the Confirmation Date.

14.3    <u>Allowed Administrative Claim</u>.  All or that portion of any Administrative Claim that is or has become an Allowed Claim.

14.4    <u>Allowed Claim</u>.  Any Claim against the Debtor (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtor or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in his Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this  Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).  A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim.  The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such Class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim, as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code).

Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

14.5    <u>Allowed Priority Tax Claims</u>.  Any Priority Tax Claims that are Allowed Claims.

14.6    <u>Assumed Agreement</u>.

14.7    <u>Avoidance Action</u>.  Any and all actions which a trustee, debtor-in-possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to §§ 542, 543, 544, 545, 546, 547, 548, 549, 550, and/ or 551 of the Bankruptcy Code.

14.8    <u>Ballot</u>.  The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

14.9    <u>Bankruptcy Code</u>.  The Bankruptcy Reform Act of 1978, as amended, and memorialized in Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

14.10    <u>Bankruptcy Court</u>.  The United States Bankruptcy Court for the Western District of Tennessee Western Division, having jurisdiction over the Chapter 11 Case.

14.11    <u>Bankruptcy Rules</u>.  The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

14.12    <u>Business Day</u>.  Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of Tennessee are authorized or required by law to close.

14.13    <u>Cash</u>.  Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

14.14    <u>Claim</u>.  Any right to payment from the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

14.15    <u>Claims Bar Date</u>.  October 14, 2014, the date established by the Bankruptcy Clerk's Office as the last date for filing proofs of claim in this Chapter 11 Case for non-governmental entities and December 17, 2014, for governmental entities .

14.16    <u>Class</u>.  Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

14.17  <u>Confirmation Date</u>.  The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

14.18  <u>Confirmation Order</u>.  An order of the Bankruptcy Court, in form and substance satisfactory to the Debtor, confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

14.19  <u>Consummation</u>.  The occurrence of the Effective Date, as outlined in Section 11.2 herein.

14.20  <u>Contingent Claim</u>.  A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

14.21  <u>Creditor</u>.  Any Person that holds a Claim against the Estate.

14.22  <u>Debtor</u>.  Worley Scrap Iron & Metal, Inc., a for-profit corporation formed and existing pursuant to the laws of the State of Tennessee.

14.23  <u>Disclosure Statement</u>.  The "Disclosure Statement in Connection with the Plan of Reorganization Pursuant to Section 1121(a) of the Bankruptcy Code" filed with the Bankruptcy Court with respect to the Plan, pursuant to § 1125 of the Bankruptcy Code, either in its present form or as may be altered, amended, or modified from time to time.

14.24  <u>Disputed Claim</u>.  A Claim which is the subject of a timely objection interposed by the Debtor, if at such time such objection remains unresolved; <u>provided</u>, <u>however</u>, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to § 502(c) of the Bankruptcy Code; <u>provided</u>, <u>further</u>, that the Debtor, in its sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

14.25  <u>Distribution Date</u>.  With respect to any Allowed Claim, each date on which a distribution is made with respect to such Allowed Claim, including the Effective Date and the date of Consummation, on which distributions of Cash and other assets are to be made by the Estate including a distribution to the Distribution Reserve, for ultimate distribution to holders of Allowed General Unsecured Claims and Allowed Subordinated Unsecured Claims.

14.26  <u>Effective Date</u>.  The Business Day on which all of the conditions set forth in Section 11.2 of this Plan shall have been satisfied or waived.

14.27  <u>Estate</u>.  The bankruptcy estate of the Debtor, including all interests in property that the Debtor holds.  The property of the Estate shall be vested in the Reorganized Debtor upon the occurrence of the Effective Date of the Plan.

14.28  <u>Final Distribution</u>.  The distribution made to holders of Claims pursuant to the Plan, which, after making such distribution, the Reorganized Debtor determines to be the final distribution to be made to Claimants pursuant to the Plan.

14.29   Final Distribution Date.  The date on which final distributions are made under the Plan, that will occur after the latter to occur of (a) all Disputed Claims and Avoidance Actions that are pursued and prosecuted by the Reorganized Debtor has been resolved by Final Order and (b) the Debtor has made its final payment, as contemplated by Article IV of the  Plan.

14.30   Final Order.  An order which is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

14.31   General Unsecured Claim  A claim not included in any other Class, including, without limitation claim for the following:  (i) Claims for goods and services delivered prior to the Petition Date; (ii) any unsecured deficiency claim of a Claimant holding a Secured Claim; (iii) any Claim arising from a judgment against a Person in any Avoidance Action; (iv) Claims arising out of the rejection on any executory contract; and (v) all Allowed claims not included in any other class and not secured by a charge against or interest in property in which the Debtor's estate has an interest.14.37

14.32    Plan.  This Plan of Reorganization pursuant to Section 1121(a) of the Bankruptcy Code," either in its present form or as it may be amended or modified from time to time in any manner permitted by the Bankruptcy Code or Bankruptcy Rules.

14.33   Other Priority Claims.  Any Claim to the extent entitled to priority in payment under §§ 507(a)(2) through 507(a)(7) of the Bankruptcy Code.

14.34   Ownership Interest.  Johnny Worley and Lonny Worley's interest in the Debtor without limitation all rights of any character whatsoever relating to such interest in the Debtor.

14.35   Person.  An individual, a corporation, a partnership, an association, a  stock company, a  venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

14.36   Petition Date.  June 20, 2014, the date of the commencement of the Chapter 11 Case.

14.37   Priority Tax Claim.  Any Claim arising prior to the Petition Date entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

14.38   Professional.  Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in the Chapter 11 Case in accordance with §§ 327 and/or 328 of the Bankruptcy Code.

14.39   Reorganized Debtor.  The Debtor, as reorganized, discharged, and re-vested with all of the assets of the Estate pursuant to this Plan.

14.40   Schedules.  The Schedules of Assets and Liabilities and Statements of Financial Affairs, and any amendments thereto, filed by the Debtor with the Bankruptcy Court in accordance with § 521(l) of the Bankruptcy Code.

14.41   Secured Claim.  A Claim to the extent of the value, of any interest in property of the Estate securing such Claim, as determined pursuant to §§ 506(a) or 1111(b) of the Bankruptcy Code.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an N/A unless, in any such case, the class of which such Claim is a part makes a valid and timely election under § 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

14.42   Taxes.   All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

14.43   United States Trustee.  The Office of the United States Trustee for Region 8.

14.44   Unsecured Claim.  A Claim not secured by a charge against or interest in property in which the Estate has an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

14.45   Voting Deadline.  The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

B.      Other Definitions.   Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this  Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein.  Wherever it appears appropriate from the context, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.  The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan.  The word "including" shall mean "including without limitation."

### ARTICLE XV
### CONFIRMATION REQUEST

The Debtor hereby requests confirmation of the Plan pursuant to §§ 1129(a) and 1129(b) of the Bankruptcy Code.

Respectfully submitted,

 /s/ Steven N. Douglass
Steven N. Douglass (Bar No. 9770)
Harris Shelton Hanover Walsh, PLLC
40 S. Main Street Suite 2700
Memphis, Tennessee 38103
Telephone: (901) 525-1455

Schedule 5.1 Attached

Schedule 5.1

### Schedule of Assumed Agreements

| Contract Party | Cure Amount | Contract Information |
|---|---|---|
| Not Applicable | | |
| | | |
| | | |