## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

In re:

WORLEY BROTHERS SCRAP IRON                    Case No. 14-26318-PJD
& METAL, INC.,                                Chapter 11

      Debtor.

_____

### FIRST AMENDED DISCLOSURE STATEMENT AND SUMMARY OF PLAN OF REORGANIZATION
_____

### ARTICLE I
### INTRODUCTION AND OVERVIEW

**NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS BUSINESS, OR FUTURE OPERATIONS, OTHER THAN THOSE SPECIFICALLY SET FORTH HEREIN, HAVE BEEN AUTHORIZED BY THE DEBTOR.**

**A.**     **GENERAL**

On June 20, 2014 (the "Petition Date"), Worley Brothers Scrap Iron & Metal, Inc. (the "Debtor") filed a voluntary petition for relief (the "Petition") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Tennessee in the Western Division (the "Bankruptcy Court"). The Debtor continues in possession of its properties and the management of its business as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

The Honorable Paulette J. Delk, United States Bankruptcy Judge, has presided over this chapter 11 case (the "Chapter 11 Case") since its inception. No Committee of Unsecured Creditors has been appointed in this case, and no chapter 11 trustee or examiner has been appointed in this Chapter 11 Case. An examiner, Bettye Bedwell, was appointed and filed her report on October 23, 2014.

On January 13, 2015, the Debtor filed the "Plan of Reorganization" (the "Plan"). The confirmation hearing on the Plan will be set by separate order of the Bankruptcy Court.

On January 14, 2015, the Bankruptcy Court conducted a hearing on the adequacy of the Disclosure Statement filed in connection with the Plan. The Bankruptcy Court authorized the Debtor to distribute the Plan. A copy of the Plan is attached as Exhibit A to the Disclosure Statement.[1] Pursuant to § 1126 of the Bankruptcy Code, the Debtor is soliciting acceptances of the Plan from the classes entitled to vote on the Plan. This Disclosure Statement is submitted pursuant to § 1125 of the Bankruptcy Code in order to provide information of the kind necessary

_____

[1]     Unless otherwise defined in this Disclosure Statement, capitalized terms not defined shall have the meanings ascribed to such terms in the Plan.

to enable a hypothetical reasonable investor to make an informed judgment in the exercise of his, her, or its right to vote on the Plan.

**B.**      **PURPOSE OF DISCLOSURE STATEMENT**

The Debtor provides this Disclosure Statement in order to permit eligible parties to make informed decisions in voting to accept or reject the Plan.

This Disclosure Statement is presented to all holders of Claims (collectively, the "Claimants") and Interests in this Chapter 11 Case in order to satisfy the requirements of § 1125 of the Bankruptcy Code.  Section 1125 requires a disclosure statement to provide information sufficient to enable a hypothetical and reasonable investor, typical of the Claimants and holders of Interests, to make an informed judgment whether to accept or reject the Plan.  This Disclosure Statement may not be relied upon for any purpose other than that described above.

**THIS DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED.**

**NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO THE VALUE OF ITS ASSETS) ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO SHALL IN TURN DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING THE INFORMATION CONTAINED IN THE EXHIBITS ATTACHED HERETO, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW. ACCORDINGLY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING THE DEBTOR OR ITS FINANCIAL CONDITION IS ACCURATE OR COMPLETE.  ANY PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLUSTRATIVE PURPOSES ONLY, AND BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, THE DEBTOR'S ACTUAL RESULTS MAY NOT BE AS PROJECTED HEREIN.**

**ALTHOUGH AN EFFORT HAS BEEN MADE TO BE AS ACCURATE AS POSSIBLE UNDER THE CIRCUMSTANCES, THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS CORRECT.  THE DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN.  EACH CLAIMANT WHO IS ENTITLED TO VOTE ON THE PLAN IS URGED TO REVIEW THE PLAN PRIOR TO CASTING SUCH VOTE.**

**THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED.   THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT**

**THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH SINCE THE DATE OF THE DISCLOSURE STATEMENT.**

**SCHEDULES OF THE ASSETS AND LIABILITIES OF THE DEBTOR AS OF THE PETITION DATE (COLLECTIVELY, AND AS AMENDED, THE "SCHEDULES") ARE ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND <u>NOT</u> IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST, INTERESTS IN, OR SECURITIES OF THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

The Honorable Paulette J. Delk, United States Bankruptcy Judge, will hold a hearing on confirmation of the Plan (the "Confirmation Hearing"), in the United States Bankruptcy Court, 200 Jefferson Avenue, Suite 413, Memphis, Tennessee, on **February 18, 2015,** at the Confirmation Hearing the Bankruptcy Court will consider whether the Plan satisfies the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the Claimants and Interest holders, and will review a ballot report concerning votes cast for acceptance and rejection of the Plan.

## C.  BRIEF OVERVIEW OF THE DEBTOR AND THE PLAN

### 1.  Description of the Debtor's Operations

The Debtor is owned by Johnny Worley and Lonny Worley and is known world-wide in the recycling business. The Debtor is a for-profit corporation organized and existing pursuant to the laws of the State of Tennessee. The Debtor's principal assets are (i) real estate; (ii) equipment; and (iii) inventory, including auto parts.

Further information regarding the Debtor's history and business operations is set forth below in Article II.

### 2.  Reasons for the Chapter 11 Filing

The Debtor was unable to recover from the economic climate and the loss of its most important piece of equipment for an extended period of time. Subsequently, it became delinquent with its secured creditors and taxing authorities. Recognizing that reorganization was the only option for maintaining the business, the Debtor filed for bankruptcy protection on June 20, 2014.

Further information regarding the events leading to the commencement of the Chapter 11 Case is set forth below in Article II.

3.      The Reorganization of the Debtor's
        Operations Pursuant to the Plan

The Plan reflects the efforts by the Debtor to continue to rehabilitate the business.  The payment of all unsecured priority claims of the taxing authorities.  Secured creditors will be amortized over various time frames.  Unsecured creditors will receive payment in full of their allowed claims over a ten year period.  The holders of Worley Brothers will retain their ownership interest.  It is anticipated that confirmation will occur on or about February 18, 2015.

For further information regarding the Plan, Claimants and other parties in interest are urged to review Article III below and the Plan itself, attached as Exhibit A to this Disclosure Statement.  The Plan will not be attached until the Disclosure Statement is approved.

D.      DISTRIBUTIONS UNDER THE PLAN

**THE FOLLOWING IS A BRIEF SUMMARY OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN.  THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY.  CLAIMANTS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE MORE DETAILED DESCRIPTION OF THE PLAN CONTAINED IN ARTICLE III OF THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF.  THE PLAN IS ATTACHED AS EXHIBIT A TO THIS DISCLOSURE STATEMENT.  (ACTUAL PLAN WILL NOT BE ATTACHED UNTIL THE DISCLOSURE STATEMENT IS APPROVED)**

The reorganization of the Debtor's business under the Plan will ensure at least an equivalent return to unsecured creditors and Interest holders that they would receive if the Debtor's estate (the "Estate") was liquidated under chapter 7 of the Bankruptcy Code.  For a more detailed explanation, please refer to Article IV below.

The following is a summary of the classification and treatment of Allowed Claims and Interests and the distribution that Claimants and holders of Interests may expect to receive under the Plan.  This summary is qualified in its entirety by reference to the relevant provisions of the Plan.  **THE FOLLOWING AMOUNTS ARE MERELY THE DEBTOR'S ESTIMATES BASED ON INFORMATION AVAILABLE AS OF THE FILING OF THIS DISCLOSURE STATEMENT.  THE ACTUAL AMOUNTS COULD BE SUBSTANTIALLY DIFFERENT, CAUSING THE ULTIMATE DISTRIBUTIONS TO CLAIMANTS TO BE SIGNIFICANTLY HIGHER OR LOWER THAN ESTIMATED.**  For a more detailed description, other significant terms, and provisions of the Plan, please refer to Article III below.

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Allowed Administrative Claims*  Allowed Administrative Claims include attorneys' fees for Debtor's counsel and fees for the Debtor's appraiser, accountants | *Not Classified Under the Plan; Unimpaired Under the Plan*  Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of | 100% |

4

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| and other professionals. Allowed Administrative Claims shall not exceed $100,000 as of the Effective Date.<br><br>Generally, an Allowed Administrative Claim means any cost and expense of administration of the Chapter 11 Case entitled to and allowed priority in payment pursuant to § 507(a)(1) of the Bankruptcy Code or as may be allowed by Final Order of the Bankruptcy Court.  Such claims shall consist of all Allowed Administrative Claims. | an Allowed Administrative Claim shall be paid, with respect to such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to their terms, be paid when otherwise due. | |
| *Allowed Priority Tax Claims*<br><br>An Allowed Priority Tax Claim shall be any Claim that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.<br><br> Allowed Priority Tax Claims Totaling $2,398,356 have been filed in the Debtor's case and, is allowed, will be paid over 60 months from July 1, 2014, or longer if the Holder agrees to same | *Not Classified Under the Plan; Unimpaired Under the Plan*<br><br>Allowed Priority Tax Claims will receive 47 monthly installments at $55,150 each beginning July 1, 2015, with a balloon of $149,525 due June, 2019.  Each allowed claim shall accrue interest at 6.5% per annum. | 100% |
| *Class 1 – Allowed Other Priority Claims*<br><br>Other Priority Claims shall be any claims presented and determined to be Allowed Claims entitled to priority in payment pursuant to §§ 507(a)(2) through 507(a)(7) of the Bankruptcy Code.<br><br>The Debtor estimates that the total amount of Other Priority Claims, if any, will be *de minimis* on the Effective Date. | *Unimpaired.*<br><br>Except to the extent the holder of an Other Priority Claim that is an Allowed Claim agrees otherwise, each holder of an Other Priority Claim shall be paid, with respect to such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Other Priority Claim that is an Allowed Claim) as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim.  The Debtor expects to have sufficient funds to pay all Other Priority Claims that become Allowed in full on the Effective Date.<br><br>The Claims in Class 1 are <u>not</u> impaired by the Plan, and as such, the Claimants in this Class, to the extent that there are any, are not entitled to vote for or against the Plan. | 100% |
| *Class 2- Allowed Secured Claim – First Bank* | *Impaired Under the Plan*<br><br>First Bank has filed five (5) separate secured claims. | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| Class 2 shall consist of the claim of First Bank.<br><br>The Allowed First Bank Claim shall be the claim in the amount of $2,043,625 plus interest, allowed attorneys' fees and expenses.  Debtor agrees such Claim is Allowed. | Each claim will be fully secured with interest at 4.790% per annum and will be amortized over 72 months from the Effective Date. First Bank's claim will be divided into two payments. The first claim will be  $1,543,625  and  be  paid  in  equal  monthly installments of $23,406 beginning January 15, 2015. The second claim will be in the principal amount of $500,000 and be paid in equal monthly installments of $8,500 each beginning the seventh month following the  Effective  Date.  Debtor  anticipates  selling equipment securing this claim and any proceeds shall be applied to principal reduction. | |
| *Class 3 – Allowed Secured Claim of Wells Fargo Equipment Finance Company*<br><br>Class 3 shall consist of the claim of Wells Fargo  Equipment  Finance  Company ("WFEFC").<br><br>The  Allowed  Wells  Fargo  Equipment Finance Company Claim shall be the claim in  the  amount  of  $1,743,053.00  plus interest,  allowed  attorney's  fees  and expenses.   Debtor agrees such Claim is Allowed. | *Impaired under the Plan*<br><br>WFEFC's claim is fully secured.   It will accrue interest at 4.79% per annum and is amortized over 72 months.   The first six months will be paid at the rate of  $20,000  per  month  with  66  payments  of  $30,000 per month thereafter. Payments shall commence on January 15, 2015 and on the first of each month thereafter. | 100% |
| *Class 4 – Allowed Secured Claim of Wells Fargo Bank, National Association*<br><br>Class 4 shall consist of the claim of Wells Fargo  Bank,  National  Association ("WFB").<br><br>The Allowed Wells Fargo Bank, National Association Claim shall be the claim in the amount of $251,249.00. | *Impaired Under the Plan*<br><br>WFB's claim is fully secured by a Caterpillar 320D, a Caterpillar 320CL and a Liebherr R944 and a second on inventory, equipment and personal property. It will accrue interest at 4% per annum and is amortized over 72 months. It will be paid in 66 equal monthly installments of $4,250 beginning 180 days after the Effective Date. | 100% |
| *Class 5 – Allowed Secured Claim of TCF Equipment Finance*<br><br>Class 5 shall consist of the claim of TCF Equipment Finance ("TCF").<br><br>The  Allowed  TCF  Equipment  Finance Claim shall be the claim in the amount of $180,396.00  plus  interest,  allowed attorney's fees and expenses.   Debtor agrees such Claim is Allowed. | *Impaired Under the Plan*<br><br>TCF's claim is fully secured.  There are four separate contracts with TCF. The two contracts secured by Contracts  001-0536759-501  and  502  will  accrue interest at 4% per annum and are amortized over 12 months. They will be paid in 12 equal monthly installments of $1,255. The two contracts secured by Contracts  001-0536759-503  and  504  will  accrue interest at 4% per annum and are amortized over 36 months. They will be paid in 36 equal monthly installments of $4,950 each. | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Class 6 – Allowed Secured Claim of Malvern National Bank*<br><br>Class 6 shall consist of the claim of Malvern National Bank.<br><br>The Allowed Malvern National Bank Claim shall be the claim in the amount of $217,980.00. Debtor agrees such Claim is Allowed. | *Impaired Under the Plan*<br><br>Malvern National Bank's claim is partially secured in the amount of $135,000. It will accrue interest at the rate of 4% per annum and be amortized over 60 months. It will be paid in equal monthly installments of $2,500. The Debtor will surrender the software securing the loan. The undersecured portion shall be treated in Class 11. | 62% |
| *Class 7 – Allowed Secured Claim of Capital One Equipment Finance*<br><br>Class 7 shall consist of the claim of Capital One Equipment Finance ("COEF").<br><br>The Allowed Capital One Equipment Finance Claim shall be the claim in the amount of $219,102.00. Debtor agrees such Claim is Allowed. | *Impaired Under the Plan*<br><br>COEF's claim shall be fully secured. It will accrue interest at the rate of 4% per annum and be amortized over 72 months. It will be paid in equal monthly installments of $3,525. | 100% |
| *Class 8 – Allowed Secured Claim of Belz Investment, Inc. and LMF, Inc.*<br><br>Class 8 shall consist of the claim of Belz Investment, Inc. and LMF, Inc.<br><br>The Allowed Belz Investment, Inc. and LMF, Inc. Claim shall be the claim in the amount of $118,635.00 plus interest, allowed attorney's fees and expenses. Debtor agrees such Claim is Allowed. | *Impaired Under the Plan*<br><br>Belz Investment, Inc. and LMF, Inc.'s claim shall be fully secured. It will accrue interest at the rate of 4% per annum and be amortized over 72 months. It will be paid in equal monthly installments of $1,875.00. | 100% |
| *Class 9 – Allowed Secured Claim of Caterpillar Financial Services Corp.*<br><br>Class 9 shall consist of the claim of Caterpillar Financial Services Corp ("CFSC").<br><br>The Allowed Caterpillar Financial Services Corp. Claim shall be the claim in the amount of $100,757.00 plus interest, allowed attorney's fees and expenses. Debtor agrees such Claim is Allowed. | *Impaired Under the Plan*<br><br>CFSC's claim shall be fully secured. It will accrue interest at the rate of 4% per annum and be amortized over 72 months. It will be paid in equal monthly installments of $1,575.00. | 100% |
| *Class 10 – Allowed Secured Claim of OmniSource* | *Impaired Under the Plan* | Unknown |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| | OmniSource's claim is undersecured and will be treated as a Class 11 claim | |
| *Class 11– Allowed General Unsecured Claims*<br><br>The total of general unsecured claims listed in the Schedules is approximately $1,324,800.00.<br><br>Non-priority unsecured creditors listed in the Debtor's Schedules will be paid, even if they have not filed a claim, so long as their debt was not indicated by the Debtor to be disputed, contingent, or unliquidated.<br><br>Class 11 shall consist of Allowed General Unsecured Claims not included in any other Class, including, without limitation claim for the following: (i) Claims for goods and services delivered prior to the Petition Date; (ii) any unsecured deficiency claim of a Claimant holding a Secured Claim; (iii) any Claim arising from a judgment against a Person in any Avoidance Action (iv) Claims arising out of the rejection of any executory contract; and (v) all Allowed Claims not included in any other class and not secured by a charge against or interest in property in which the Debtor's estate has an interest. | *Impaired Under the Plan*<br><br>Class 11 claims will be paid in full over a ten (10) year period. Monthly installments of $13,800.00 will commence on the 25th month after the Effective Date. | 100% |
| *Class 12 – Allowed Interests* | Johnny Worley and Lonny Worley will retain their ownership interests. | 100% |

## E.   CLAIMANTS ENTITLED TO VOTE ON THE PLAN

Holders of Allowed Claims in Classes 2 through 11 are entitled to vote on the Plan. As set forth in Section 6.1 of the Plan, Claimants holding claims that (i) have not been objected to, (ii) have been allowed by Final Order of the Bankruptcy Court, or (iii) have been temporarily allowed for voting purposes, are entitled to vote. Holders of Disputed Claims who wish to vote on the Plan must seek an order from the Bankruptcy Court temporarily allowing such Disputed Claims for voting purposes only. For more information, please refer to Article I, Section F below.

The Plan will be confirmed if it is accepted by the requisite majorities of each Class of Claims entitled to vote on the Plan and all other conditions to confirmation are met by the

Debtor; provided, however, that the Debtor may seek to "cramdown" the Plan pursuant to Section 1129(b) of the Bankruptcy Code on any Class of Claimants that vote to reject the Plan. (For more information on "cramdown," please refer to Article I, Section F below).  The requisite majority for confirmation of the Plan by a particular Class without "cramdown" is acceptance by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Allowed Claims that are actually voted.

**F.      INSTRUCTIONS REGARDING VOTING, CONFIRMATION, AND OBJECTIONS TO CONFIRMATION**

**1.      Voting Instructions**

**BEFORE VOTING, YOU SHOULD READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS, INCLUDING THE PLAN AND ITS SCHEDULES, IN THEIR ENTIRETY**.

You may vote on the Plan by completing and mailing enclosed ballot to:

> Steven N. Douglass, Esq.
> Harris Shelton Hanover Walsh, PLLC
> 40 S. Main Street, Suite 2700
> Memphis, Tennessee 38103

You should use the ballot sent to you with this Disclosure Statement to cast your vote for or against the Plan.  You may NOT cast ballots or votes orally.  In order for your ballot to be considered by the Bankruptcy Court, it must be received at the above address no later than the time designated in the notice accompanying this Disclosure Statement.  **Any ballot executed by the holder of an Allowed Claim that does not indicate acceptance or rejection of the Plan shall be considered a vote to accept the Plan.**  If you are a Claimant in Classes 2 through 11 and did not receive a ballot with this Disclosure Statement, you may obtain a ballot by contacting:

> Steven N. Douglass, Esq.
> Harris Shelton Hanover Walsh, PLLC
> 40 S. Main Street, Suite 2700
> Memphis, Tennessee 38103

Only holders of Allowed Claims in impaired Classes are entitled to vote on the Plan.  In addition, the record date of all Claims against the Debtor for voting purposes shall be the date on which the Bankruptcy Court enters an order approving this Disclosure Statement.  Persons holding Claims transferred after such date will not be permitted to vote on the Plan.  An impaired Class of Claims accepts the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in the Class that are actually voted are cast in favor of the Plan.  Subject to the terms of the Plan, Claimants who do not vote are not counted as having voted either for or against the Plan.  Pursuant to the provisions of § 1126 of the Bankruptcy Code, the Bankruptcy Court may disallow any vote accepting or rejecting the Plan if such vote is not cast in good faith.

**A Claimant's failure to vote on the Plan will not affect such Claimant's right to a Distribution under the Plan.**

If the voting members of an impaired Class do not vote unanimously for the Plan but, nonetheless, vote for the Plan by at least the requisite two-thirds (2/3) in amount of Allowed Claims in that Class and one-half (1/2) in number of Allowed Claims actually voted in that Class, the Plan, at a minimum, must provide that each member of such Class will receive property of a value, as of the Effective Date, that is not less than the amount such Class members would receive or retain if the Debtor's Estate was liquidated under chapter 7 of the Bankruptcy Code. A detailed liquidation analysis is attached as <u>Exhibit B</u> to this Disclosure Statement.

The Debtor may dispute Proofs of Claim that have been filed or that the Debtor listed in the Schedules filed with the Bankruptcy Court. Persons whose Claims are disputed may vote on or otherwise participate in Distributions under the Plan <u>ONLY</u> to the extent that the Bankruptcy Court allows their Claims. The Bankruptcy Court may temporarily allow a Claim for voting purposes only. The Debtor's Schedules, which list the Claims and Interests and whether such Claims are disputed, may be inspected at the Office of the Clerk of the United States Bankruptcy Court for the Western District of Tennessee, 200 Jefferson Avenue, Suite 413, Memphis, Tennessee.

The Bankruptcy Court established October 14, 2014 as a general claims deadline and December 17, 2014 as the deadline by which governmental units proofs of Claim must be filed in the Chapter 11 Case.

Whether or not a Claimant votes on the Plan, such Persons will be bound by the Plan, including the terms and treatment of Claims and Interests set forth therein, if the Plan is accepted by the requisite majorities of the Classes or is "crammed down" and is confirmed by the Bankruptcy Court. Allowance or disallowance of a Claim for voting purposes does <u>not</u> necessarily mean that all or a portion of that Claim will be allowed or disallowed for purposes of Distribution under the Plan.

## 2.    <u>Confirmation of the Plan</u>

Once it is determined which impaired Classes have or have not accepted the Plan, the Bankruptcy Court will determine whether the Plan may be confirmed. If all impaired Classes accept the Plan, it will be confirmed provided that the Bankruptcy Court finds the other conditions set forth in § 1129(a) of the Bankruptcy Code satisfied.

**THESE ARE COMPLEX STATUTORY PROVISIONS, AND THE PRECEDING PARAGRAPHS ARE NOT INTENDED TO BE A COMPLETE SUMMARY OF THE LAW. IF YOU DO NOT UNDERSTAND ANY OF THESE PROVISIONS, PLEASE CONSULT WITH YOUR ATTORNEY. IF ALL CLASSES DO NOT ACCEPT THE PLAN, THE DEBTOR INTENDS TO RELY UPON THE "CRAMDOWN" PROVISION OF SECTION 1129(b) OF THE BANKRUPTCY CODE.**

The Bankruptcy Court may confirm the Plan even if all of the impaired Classes do not accept the Plan, if the Bankruptcy Court finds that certain additional conditions are met. Accordingly, if the Plan is not accepted by the requisite amount of Claims in Classes 2, through 11, the Debtor will seek confirmation of the Plan as to such non-accepting Class or Classes pursuant to Section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code is generally referred to as the "cramdown" provision. The Bankruptcy Court may confirm the Plan over the objection of a non-accepting Class if the Plan satisfies one of the alternative requirements of Section 1129(b)(2)(A) of the Bankruptcy Code. The Bankruptcy Court may confirm the Plan over the objection of a non-accepting Class if the non-accepting member of the Class will receive the full value of its Claim, or, if the non-accepting member of the Class stands

to receive less than full value, no Classes of junior priority will receive anything on account of their respective Claims.

### 3.     Objections to Confirmation

Any objections to confirmation of the Plan must be filed with the Clerk of the United States Bankruptcy Court for the Western District of Tennessee with a mailing of address of 200 Jefferson Avenue, Suite 413, Memphis, Tennessee 38103 and served upon (a) Steven N. Douglass, Esq., Harris Shelton Hanover Walsh, PLLC , 40 S. Main Street, Suite 2700, Memphis, Tennessee 38103; (b) Jeffrey D. Germany, Esq. 45 N. Third Street, Suite 201, Memphis, Tennessee 38103; (d) Russell W. Savory, Esq. 88 Union Avenue, 14th Floor, Memphis, Tennessee 31003l (d) Harris P. Quinn, Esq. 50 North Front Street, Suite 845, Memphis, Tennessee 38103; (e) Roger A. Stone, Esq. 200 Jefferson Avenue, Suite 100, Memphis, Tennessee 38103; (f) Jonathan D. Horton, Esq., 200 W. Capitol Avenue, Suite 2300, Little Rock, Arkansas 72201; (g) Carrie Ann Rohrscheib, Esq., Office of U.S. Trustee, 200 Jefferson Avenue, Memphis, TN 38103; and (h) any other party in interest who has requested notice in such manner as will cause such objections to be filed with the Bankruptcy Court and received by the aforementioned parties <u>no later</u> than **February 9, 2015.**

### 4.     Confirmation Hearing

A hearing on confirmation of the Plan is scheduled to be held before the Honorable Paulette J. Delk, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of Tennessee, 200 Jefferson Avenue, Suite 413, Memphis, Tennessee on **FEBRUARY 18, 2015 AT 9:30 A.M.** Announcement of the adjournment of such hearing, if any, may be made in writing or in open court. No further written notice is required to be sent to Claimants, interest holders, or other parties in interest.

### ARTICLE II
### BACKGROUND INFORMATION REGARDING THE DEBTOR

### A.     HISTORY OF THE DEBTOR'S BUSINESS

Worley Brothers Scrap Iron & Metal, Inc. was incorporated in 2005 after Johnny and Lonny Worley decided that their smaller, separate businesses were stronger as one larger one with many locations. These small entities include B & B Recycled Auto Parts in north Memphis, Worley Auto Parts in south Memphis, A1 Auto Parts in Atoka TN, and Mobile Crusher (mobile unit that goes to different jobsites), based in Memphis. The majority of their business was buying decommissioned vehicles, selling quality used auto parts, and crushing the hulks for scrap metal recycling. The Debtor was created just before Hurricane Katrina in 2005, and was in the right place to be a major contributor of the cleanup of flooded vehicles and metal structures along the Louisiana and Mississippi Gulf Coast.

In October 2005, Lonny and Johnny Worley also opened up their first business buying metals, near downtown Memphis, at 29 E Illinois. Soon, purchasing scrap metals would become the Debtor's primary business.

Due to the overwhelming reception of the downtown location, by August 2007, Worley Brothers acquired Complete Auto Parts on Chelsea Avenue and converted it to being both a used auto parts retail store and a scrap metal purchasing location. The year 2008 will be remembered

as the beginning of a significant economic downturn and recession but it resulted in a time of business expansion for the Debtor.  In May 2008, WesCo Recycling in Crenshaw, Mississippi joined Worley Brothers as their first scrap metal location in Mississippi.  A few months later, A1 Auto Parts in Atoka, TN was converted and upgraded to a scrap metal location.  Southside Auto Parts in April 2009 in south Memphis joined the Worley Brother family as retail used auto parts location.  In September 2010, Worley Brothers opened a new scrap metal purchasing location at 1701Thomas, Memphis Tennessee to help relieve the congestion at their other two Memphis scrap metal locations.

August 2011 saw Worley Brothers expand into its new highly-anticipated Corporate Headquarters at 1554 Thomas Street, Memphis, Tennessee. This location consists of 70 acres, and is the main hub of the operations in both scrap metal purchases and used automotive parts sales.    In January of 2013, Worley Brothers consolidated it's north Memphis used automotive parts business, by moving the retail auto parts side of Complete Auto Parts and B&B Recycled Auto Parts to the main hub, giving the scrap metal purchasing at the Chelsea location the room it needed to grow – and selling the no longer needed B&B auto parts location. With the addition of a new automotive shredder in December 2013, the Debtor enhanced its metal handling capabilities.

## B.    EVENTS LEADING TO THE COMMENCEMENT OF THE CHAPTER 11 CASE

The growth and expansion were met with a global downturn in scrap markets. In February, 2013, the Debtor's primary shredder was destroyed in a fire. The shredder was critical to the Debtor in order to process scrap. While insurance covered replacement of the shredder, there were significant delays in obtaining a replacement. The Debtor was without the equipment for substantially all of 2013. This had a substantial negative impact on cash flow and coupled with the depressed markets, led to the company's economic woes.

## C.    PENDING LITIGATION

At the time of the commencement of this case, First Bank filed an action in Shelby County Chancery Court seeking, among other things, the appointment of a Receiver.   The Docket No. is CH-14-09713.  Other litigation is as follows:  (a) *Advantage Companies, LLC v Worley Brothers Scrap Iron & Metal, Inc., et al.* Case No. CV2013-299GCD pending in the Circuit Court of Desoto County; (b) *Sean Watters v. B&B Recycle Auto Parts, et al.,* Case No. 1670569 pending in the Shelby County General Sessions Court; (c) *Jeremy Corbett v. Worley Brothers Scrap Iron & Metal, Inc.* Case No. 2013-0060 pending in the Circuit Court in Quitman County, Mississippi; (d) *OmniSource Corporation v. Worley Brothers Scrap Iron & Metal, Inc.* Case No. 13-cf-2125-JTF-dkv pending in the United States District Court for the Western District of Tennessee; and (e) *Trowanna Broadnax v. B&B Auto Parts aka Worley Brothers Scrap Iron & Metal, Inc.* Case No. 1671781 pending in the Shelby County General Sessions Court.

## D.    SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

### 1.    Continuation of Business After Filing

Pursuant to a cash collateral order entered with First Bank's consent and consensual extensions thereof, the Debtor has funded its business operations during its Chapter 11 case. The Debtor has continued to manage its operations and affairs, subject to the oversight of the United States Trustee and the Bankruptcy Court. Upon the filing of the Chapter 11 Petition, substantially all claims against the Debtor that existed prior to the Petition Date became subject to the automatic stay provisions under § 362 of the Bankruptcy Code while the Debtor continues operation of its business as debtor-in-possession. Certain pre-petition claims may arise from the determination by the Bankruptcy Court of allowed claims for contingent liabilities and other disputed amounts.

Pursuant to the Order Granting Joint Motion for the Appointment of Examiner [Docket 105], the United States Trustee selected Bettye Bedwell as the Examiner. The Examiner filed her report on October 23, 2014 [Docket 146]. Throughout its bankruptcy case, the Debtor has focused its energies on its restructuring. The Debtor's business is cash intensive. A cash management system has been implemented and continues to be refined. The Debtor has instituted a weekly reporting system to First Bank and will continue to do so after confirmation. Moreover, Debtor has reduced its workforce from 81 at the Petition Date to 54 as of the December 9, 2014. Two locations, Southside Auto Parts and Worley Auto Parts have been closed. A marshalling of non-essential equipment assets is underway. First Tennessee Bank was a secured creditor but the Debtor has surrendered the collateral securing the claim with the exception of the baler which is attached to its main building; the Debtor is attempting to finance the purchase of or retain the balance at a cost of $240,000.00, the appraised liquidation value. The surrender resulted in a $1.5 million reduction in the Debtor's debt load.

### 2.    Retention of Legal Professionals by the Debtor

On October 3, 2014, the Bankruptcy Court entered an order authorizing the Debtor to retain and employ Harris Shelton Hanover Walsh, PLLC ("Harris Shelton") as bankruptcy counsel to the Debtor in connection with the Chapter 11 Case.

### 3.    Filing of Schedules

On the Petition Date, the Debtor filed its Petition, List of 20 Largest Unsecured Creditors and Matrix with the Bankruptcy Court. On July 7, 2014, the Debtor completed the filing of the Statement of Financial Affairs and Schedules.

### 4.    Bar Date for Filing of Claims

The Bankruptcy Court established October 14, 2014 and December 17, 2014(the "Bar Date") as the last date for Claimants wishing to receive any distribution under the Plan to file Proofs of Claim against the Debtor, non-governmental and governmental respectively, for pre-petition amounts allegedly owed. The Clerk of the Bankruptcy Court transmitted notice of the Bar Date to all known actual or potential Claimants and informed them that the Bar Date was the deadline for filing Proofs of Claim with the Bankruptcy Court.

### E.    POST-CONFIRMATION OPERATION OF THE REORGANIZED DEBTOR

Attached as Exhibit C to this Disclosure Statement are the historical financial data of the Debtor and the financial projections of the Reorganized Debtor.

# ARTICLE III
# THE PLAN OF REORGANIZATION

**THE FOLLOWING IS A SUMMARY OF THE PROVISIONS OF THE PLAN AND, ACCORDINGLY, IS NOT AS COMPLETE AS THE FULL TEXT OF THE PLAN THAT ACCOMPANIES THIS DISCLOSURE STATEMENT. THE PLAN ITSELF, ATTACHED HERETO AS _EXHIBIT A_, SHOULD BE READ IN ITS ENTIRETY. (_ACTUAL PLAN WILL NOT BE ATTACHED UNTIL THE DISCLOSURE STATEMENT IS APPROVED_)**

## A.   SUMMARY OF PAYMENT PROVISIONS OF THE PLAN

### 1.   Impairment of Claims

Under the Bankruptcy Code, a class of claims or interests is deemed "impaired" under a Chapter 11 Plan unless, in general, the rights of the holders of the claims or interests of such class are not altered or, with respect to interests, the holders receive cash equal to the greater of (i) any liquidation preference, or (ii) the redemption price, if either is applicable. Any class that is deemed impaired must accept the Plan by the requisite majority before the Plan can be confirmed, unless the Bankruptcy Court finds, pursuant to § 1129(b) of the Bankruptcy Code, that the Plan is fair and equitable and does not discriminate unfairly with respect to each class that is impaired and has not accepted the Plan.

### 2.   Treatment of Claims and Interests

The treatment of and consideration to be received by holders of Allowed Claims and Interests pursuant to the Plan will be in full settlement, release, and discharge of their respective Allowed Claims and Interests relating to the Debtor, the Estate, and other Persons, as applicable, as specified in the Plan.

## B.   CLASSIFIED CLAIMS AND INTERESTS

The Plan divides the Claims and Interests in the Debtor's Estate into various Classes and designations. Below is a description of the general Classes and designations of Claims and Interests in the Debtor's Estate and the corresponding treatment thereof under the Plan. Allowed Administrative Claims and Allowed Priority Tax Claims are not designated as classes of Claims for purposes of the Plan and §§ 1123, 1124, 1126, and 1129 of the Bankruptcy Code.

**ALL AMOUNTS LISTED FOR EACH CLASS OF CLAIM ARE MERELY ESTIMATES, SUBJECT TO CHANGE THROUGH THE ADJUDICATION OF THE DEBTOR'S OBJECTIONS TO CLAIMS, IF ANY. ALL CAPITALIZED TERMS NOT DEFINED HEREUNDER SHALL HAVE THE MEANINGS ASCRIBED TO THEM IN THE PLAN.**

### 1.   Allowed Administrative Claims

Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, with respect to such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, except that Allowed

Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to their terms, be paid when otherwise due.

Administrative Claims consist of the costs and expenses of the administration of the Chapter 11 Case, including professional fees, through the Confirmation Date. The Allowed Administrative Claims are granted priority in payment pursuant to § 507(a) of the Bankruptcy Code. The Debtor has kept substantially current in payment of its obligations incurred during the course of the Chapter 11 Case, inclusive of fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930.

Because under the terms of the Plan, there will be services required after Confirmation, and because the actual fees paid for professional services are determined by the Bankruptcy Court, the amounts estimated for Allowed Administrative Claims are based on the amounts anticipated to be due as of Confirmation of the Plan and are subject to change. Administrative Claims should be limited to $100,000 as of the date of Confirmation.

Allowed Administrative Claims are not classified. Solicitation of acceptances from holders of Allowed Administrative Claims is not required and is not being undertaken. Holders of Allowed Administrative Claims are deemed to accept the Plan.

### 2.    **Allowed Priority Tax Claims**

There are Priority Tax Claims in the amount of $2,389,356.00. Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtor, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (iii) as soon thereafter as is practicable, or (b) Forty-Seven (47) monthly installments of $55,150.00 and a balloon payment of $149,525.00. Each claim shall accrue interest at the rate of 6.5% per annum until paid in full.

Priority Tax Claims consist of Claims arising prior to the Petition Date entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code. Allowed Priority Tax Claims are not classified. Solicitation of acceptances from holders of Allowed Priority Tax Claims is not required and is not being undertaken. Holders of Allowed Priority Tax Claims are deemed to accept the Plan.

### 3.    **Class 1 - Allowed Other Priority Claims**

There are no Other Priority Claims. To the extent that any Other Priority Claims are presented and are determined to be Allowed Claims entitled to priority in payment pursuant to §§ 507(a)(2) through 507(a)(7) of the Bankruptcy Code, such Claims will comprise Class 1. Except to the extent the holder of an Other Priority Claim that is an Allowed Claim agrees otherwise, each holder of an Other Priority Claim shall be paid, with respect to such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Other Priority Claim that is an Allowed Claim) as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim. The Debtor estimates that the total amount of Other Priority Claims, if any, will be *de minimis* on the Effective Date. The Debtor expects to have sufficient funds to pay all Other Priority Claims that become Allowed Claims in full on the Effective Date.

The Claims in Class 1 are not impaired by the Plan.  Solicitation of acceptances from holders of Other Priority Claims is not required and is not being undertaken.  Holders of Other Priority Claims are deemed to accept the Plan.

**4.**      **Class 2 – Allowed Secured First Bank Claim**

Class 2 shall consist of the claim of First Bank in the amount of $2,043,625 plus interest, allowed attorneys' fees and expenses.

First Bank has filed five (5) separate secured claims.  Each claim will be fully secured with interest at 4% per annum and will be amortized over 72 months from the Effective Date. First Bank's claim will be divided into two payments. The first claim will be $1,543,625 and be paid in equal monthly installments of $23,406 beginning January 15, 2015. Debtor anticipates selling equipment securing this claim and any proceeds shall be applied to principal reduction. The second claim will be $500,000 and be paid in equal monthly installments of $8,500 beginning the Effective Date.

**5.**      **Class 3 – Allowed Secured Wells Fargo Equipment Finance Company Claim**

Class 3 shall consist of the claim of Wells Fargo Equipment Finance Company ("WFEFC") in the amount of $1,743,053.00 plus interest, allowed attorneys' fees and expenses.

WFEFC's claim is fully secured.  It will accrue interest at 4.79% per annum and is amortized over 72 months. The first six months will be paid at the rate of $20,000 per month with 66 payments of $30,000 per month thereafter.

**6.**      **Class 4 – Allowed Secured Claim of Wells Fargo Bank, National Association Claim**

Class 4 shall consist of the claim of Wells Fargo Bank, National Association ("WFB") in the amount of $251,249.00.

WFB's claim is fully secured.  It will accrue interest at the rate of 4% per annum and is amortized over 72 months.  It will be paid in sixty-six (66) equal monthly installments of $4,250.00 beginning one hundred and eighty (180) days after the Effective Date.

**7.**      **Class 5– Allowed Secured TCF Equipment Finance Claim**

Class 5 shall consist of the claim of TCF Equipment Finance ("TCF") in the amount of $180,396.00 plus interest, allowed attorneys' fees and expenses.

TCF's claim is fully secured.  There are four separate contracts with TCF. The two contracts secured by Contracts 001-0536759-501 and 502 will accrue interest at 4% per annum and are amortized over twelve (12) months. They will be paid in twelve (12) equal monthly installments of $1,255. The two contracts secured by Contracts 001-0536759-503 and 504 will accrue interest at 4% per annum and are amortized over thirty-six (36) months. They will be paid in 36 equal monthly installments of $4,950 each.

8.      **Class 6 – Allowed Secured Malvern National Bank Claim**

Class 6 shall consist of the claim of Malvern National Bank in the amount of $217,980.00.

Malvern National Bank's claim is partially secured in the amount of $135,000.00. It will accrue interest at the rate of 4% per annum and be amortized over sixty (60) months. It will be paid in equal monthly installments of $2,500.00. The Debtor will surrender the software securing the loan. The undersecured portion shall be treated in Class 11.

9.      **Class 7 - Allowed Secured Capital One Equipment Finance Claim**

Class 7 shall consist of the claim of Capital One Equipment Finance ("COEF") in the amount of $219,102.00.

COEF's claim shall be fully secured. It will accrue interest at the rate of 4% per annum and be amortized over seventy-two (72) months. It will be paid in equal monthly installments of $3,525.00.

10.      **Class 8 – Allowed Secured Belz Investment, Inc. and LMF, Inc. Claim**

Class 8 shall consist of the claim of Belz Investment, Inc. and LMF, Inc. in the amount of $118,635.00 plus interest, allowed attorneys' fees and expenses.

Belz Investment, Inc. and LMF, Inc.'s claim shall be fully secured. It will accrue interest at the rate of 4% per annum and be amortized over seventy-two (72) months. It will be paid in equal monthly installments of $1,875.00.

11.      **Class 9 – Allowed Secured Caterpillar Financial Services Corp. Claim**

Class 9 shall consist of the claim of Caterpillar Financial Services Corp. ("CFSC") in the amount of $100,757.00 plus interest, allowed attorneys' fees and expenses.

CFSC's claim shall be fully secured. It will accrue interest at the rate of 4% per annum and be amortized over seventy-two (72) months. It will be paid in equal monthly installments of $1,575.00

12.      **Class 10 – Allowed Secured OmniSource Claim**

Class 10 shall consist of the claim of OmniSource. OmniSource's claim is undersecured and will be treated as a Class 11 claim.

13.      **Class 11 – Allowed General Unsecured Claims**

Class 11 shall consist of Allowed General Unsecured Claims not included in any other Class, including, without limitation claim for the following: (i) Claims for goods and services delivered prior to the Petition Date; (ii) any unsecured deficiency claim of a Claimant holding a

Secured Claim; (iii) any Claim arising from a judgment against a Person in any Avoidance Action (iv) Claims arising out of the rejection of any executory contract; and (v) all Allowed Claims not included in any other class and not secured by a charge against or interest in property in which the Debtor's estate has an interest. The total of general unsecured claims listed in the Schedules is approximately $1,324,800.00.

Class 11 claims will be paid in full over a ten (10) year period. Monthly installments of $13,800.00 will commence on the 25th month after the Effective Date.

### 14.   Class 12 – Interest Holders

Class 12 shall consist of the ownership interests of Johnny Worley and Lonny Worley. Class 12 claimants will retain their ownership interests.

## C.   OTHER PROVISIONS OF THE PLAN

### 1.   Executory Contracts

#### (a)   Assumed Agreements

As of the Effective Date, all unexpired leases of non-residential real property and other executory contracts that have not previously been assumed or rejected, or are not the subject of a motion to assume or reject pending on the Confirmation Date, shall be deemed ASSUMED by the Debtor, and the Confirmation Order shall constitute an order under § 365 of the Bankruptcy Code authorizing the assumption of such agreements as of the Effective Date, unless provided for in the Plan.

#### (b)   Rejected Agreements

Except to the extent a prior order of the Bankruptcy Court provided for an earlier date, in which case such earlier date shall control, all proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases shall be filed with the Bankruptcy Court within thirty (30) days after the earlier of (i) the date of service of notice of entry of an order of the Bankruptcy Court approving such rejection, or (ii) the date of service of notice of the Confirmation Date, if such executory contract or unexpired lease has been rejected under the Plan. Any Claims not filed within such time shall be released and discharged and forever barred from assertion against the Debtor, its Estate and property.

### 2.   Avoidance Actions

#### (a)   Assignment of Avoidance Actions

The Debtor specifically reserves and retains the right to bring Avoidance Actions after Confirmation of the Plan and the right to settle and avoidance action. All proposed settlements of Avoidance Actions where the settlement amount of the claim in question is greater than $5,000 shall be subject to the approval of the Bankruptcy Court after notice and opportunity for a hearing (as that term is used in § 102(1) of the Bankruptcy Code). All proposed settlements of

Avoidance Actions where the settlement amount of the claim in such Avoidance Action is $5,000 or less may be entered into by Debtor without further notice, hearing, or order of the Court.  The net proceeds from the Avoidance Actions after payment of fees and expenses incurred by the Debtor in successfully prosecuting the Avoidance Actions shall be deposited to the Distribution Reserve as provided for in the Plan.

(b)      <u>Transfers Subject to Avoidance</u>

The Debtor has not conducted an in-depth analysis of the pre-petition transfers that may be subject to avoidance pursuant to §§ 542, 543, 544, 545, 546, 547, 548, 549, 550, and/ or 551 of the Bankruptcy Code.  However, it is the Debtor's opinion that transfers to most trade creditors made within 90 days of the Petition Date are not avoidable pursuant to the Bankruptcy Code.  Such transfers to trade creditors are identified in item 3a of the Debtor's statement of financial affairs, filed in the Debtor's case on July 7,2014 (the "Debtor's SOFA").

Likewise, it is the Debtor's opinion that transfers made to insiders of the Debtor, as that term is defined in § 101(31) of the Bankruptcy Code, are not avoidable pursuant to the Bankruptcy Code.

3.      <u>Administrative Claims Bar Date</u>

In accordance with Section 2.2 of the Plan, and except as otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, <u>including</u> all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served on counsel for the Debtor and the U.S. Trustee no later than thirty (30) days after the Effective Date.  Any Person required to file and serve a request for payment of an Administrative Claim who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof.  The Administrative Claims Bar Date shall <u>not</u> apply to fees and expenses of Professionals incurred after the Confirmation Date.

4.      <u>Distributions</u>

(a)      <u>Establishment of Reserves</u>

Beginning after the close of the first fiscal year following Effective Date, the Reorganized Debtor shall establish the Debt Services Fund, which shall be held in a segregated interest-bearing bank account.  After the Debt Services Fund is established and subject to Surplus Cash Flow the Reorganized Debtor shall pay into the Debt Services fund funds for distribution on allowed claims pursuant to Article III of the Plan.

(b)      <u>Disbursing Agent</u>

Except as otherwise provided in the Plan, the Reorganized Debtor, or an agent employed by the Reorganized Debtor, shall serve as the "disbursing agent" and shall make all distributions provided for under the Plan.

### (c)    Distributions and Payments

The Reorganized Debtor shall make the payments and distributions expressly required to be made with respect to Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Claims and Allowed General Unsecured Claims at such time or times as are provided for in Articles II and III of the Plan.

### (d)    Payment or Distribution Upon Resolution of Disputed Claims

The Debtor and the Reorganized Debtor shall make no payments or distributions with respect to any portion of a Disputed Claim unless and until (a) all objections to such Disputed Claim have been resolved or determined by a Final Order of the Bankruptcy Court, or (b) the Bankruptcy Court shall have entered an order treating any portion of a Disputed Claim as an Allowed Claim.  Payments and distributions to each holder of a Disputed Claim to the extent that it ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the class of Claims to which such Allowed Claim belongs.  A Disputed Claim that is estimated for purposes of allowance and distribution pursuant to § 502(c) of the Bankruptcy Code and which is estimated and Allowed at a fixed amount by Final Order of the Bankruptcy Court shall thereupon be an Allowed Claim for all purposes in the amount so estimated and Allowed.

### (e)    Delivery of Distributions; Unclaimed Property

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed or if the Reorganized Debtor has been notified of a change of address).  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtor is notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest (except to the extent that such missed distributions have become unclaimed property).  All claims for undeliverable distributions shall be made on or before the earlier of the second (2nd) anniversary of the applicable Distribution Date and the Final Distribution Date, and after such date, such undeliverable distributions shall be unclaimed property.   All unclaimed property attributable to any General Unsecured Claim or Insider Subordinated Claim shall revert to the Reorganized Debtor for distribution as Plan payments to, and the claim of any holder with respect to such unclaimed property shall be discharged and forever barred and, in the case of a Claim, shall no longer be deemed an Allowed Claim.

Checks issued by the Reorganized Debtor with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissue of any check shall be made, in writing, to the Reorganized Debtor by the record holder of the Allowed Claim with respect to which such check was originally issued.  Any funds with respect to such a voided check shall be deemed an undeliverable or unclaimed distribution and, in the case of checks paid to holders of Claims other than General Unsecured Claims or Insider Subordinated Claims, shall revert to the Reorganized Debtor; in the case of check paid to holders of General Unsecured Claims or Insider Subordinated Claims, the funds shall be distributed to the Distribution Reserve.

### (f)    Method of Payment

Payments of Cash required pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank at the election of the Person making such payment.

### (g)    Payment Dates

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

### (h)    Rounding

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

### (i)    Payments of Less Than Five (5) Dollars

If a Cash payment otherwise provided for by the Plan with respect to an Allowed Claim would be less than five dollars ($5.00) (whether in the aggregate or on any Distribution Date provided for in the Plan), notwithstanding any contrary provision of the Plan, the Reorganized Debtor shall not be required to make such payment.

### (j)    Setoff

The Reorganized Debtor may, but shall not be required to, setoff against any Claim (and the distributions to be made pursuant to the Plan with respect to such Claim), claims of any nature whatsoever that the Debtor, its Estate, or the Reorganized Debtor may have, against the holder of such Claim.  Notwithstanding the foregoing, the failure to effect such a setoff will not constitute a waiver or release by the Reorganized Debtor of any such claim against such holder.

### 5.    Objections to Claims

### (a)    Objections to Claims

Following the Effective Date, the Reorganized Debtor shall be authorized to object to Claims, or to succeed or otherwise join any claims objection filed by the Debtor prior to the Effective Date, so as to have the Bankruptcy Court determine the amounts to be allowed, if any, of such Claims and thus paid pursuant to the Plan.   Objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of such Claims no later than one hundred eighty (180) days after the Effective Date; provided, however, that this deadline may be extended by the Bankruptcy Court upon the entry of an order by the Bankruptcy Court extending such deadline. An objection to the allowance of a Claim by the Reorganized Debtor must be filed with the Bankruptcy Court and served upon the holder of the subject Claim(s) and all parties who have requested notice in this Chapter 11 Case.

Notwithstanding the foregoing, unless an order of the Bankruptcy Court specifically provides for a later date, any proof of claim for pre-petition debts of the Debtor filed after Claims' Bar Date shall be automatically disallowed in full as a late-filed claim, without any action by the Reorganized Debtor necessary, unless and until the party filing such Claim obtains

(i) the written consent of the Reorganized Debtor to file such Claim late, or (ii) approval from the Bankruptcy Court upon notice to the Reorganized Debtor that permits the late filing of the Claim, in which event, the Reorganized Debtor shall have one hundred eighty (180) days from the date of such written consent or order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtor.

**(b)**      **Prosecutions of Objections to Claims**

Prior to the Effective Date, the Debtor shall litigate to judgment, propose settlements of, or withdraw objections to such Disputed Claims asserted against it as the Debtor may choose. From and after the Effective Date, the Reorganized Debtor shall litigate to judgment, propose settlements of, or withdraw objections to all Disputed Claims. Prior to the expiration of thirty (30) days from the date of service of any such objection to Claims, the Claimant(s) whose Claim(s) was the subject of the objection must file a response to the objection with the Bankruptcy Court and serve the response upon the objecting party, the Reorganized Debtor. If a Claimant(s) whose Claim(s) was the subject of the objection fails to file and serve its response to the objection within the 30-day response deadline, the Bankruptcy Court may grant the relief requested in the objection against the non-responding Claimant(s) without further notice or hearing. All proposed settlements of Disputed Claims shall be subject to the approval of the Bankruptcy Court after notice and opportunity for a hearing (as that term is used in § 102(1) of the Bankruptcy Code).

**6.**      **Payment of Certain Professional Fees/Expenses**

The Reorganized Debtor shall assume responsibility for the payment of all fees and expenses of Professionals retained by the Estate and accruing after the Effective Date.

**7.**      **Discharge**

The consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, discharge, release, and termination of all Claims of any nature whatsoever against the Estate or the Debtor. In addition, except as otherwise provided in the Plan, upon the Effective Date, the Debtor shall be deemed discharged and released pursuant to § 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in § 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan.

The Confirmation Order shall be a judicial determination of discharge and termination of all liabilities of and all Claims against the Estate and Debtor, except as otherwise specifically provided in the Plan. On the Confirmation Date, as to every discharged Claim and other debt of the Debtor, the holder of such Claim or other debt of the Debtor shall be permanently enjoined and precluded from asserting against the Reorganized Debtor, or against their assets or properties or any transferee thereof, any other or further Claim or other debt of the Debtor based upon any document, instrument, or act, omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date except as expressly set forth in the Plan. In the event that, after the Confirmation Date, any Person asserts, against the Reorganized Debtor or any of their subsidiaries or affiliates, any right to payment or equitable remedy for breach of

performance which gives rise to a right of payment, which right was not asserted prior to the Confirmation Date but is based on any act, fact, event, occurrence, or omission, by or relating to the Debtor, as the Debtor existed before the Confirmation Date, and in the further event that such right is determined by a court of competent jurisdiction not to have been discharged pursuant to the provisions of Bankruptcy Code § 1141 and the Plan, and that such right may be asserted against the Reorganized Debtor, then, in such circumstances the holder of such right shall be entitled to receive from the Reorganized Debtor value equivalent to the value such holder would have received if such right had been asserted against the Debtor before the Confirmation Date and only to the extent such right would have been allowed or allowable as a Claim.  Nothing in this Section 7 shall have the effect of excepting from discharge any Claim that is or would be discharged pursuant to Bankruptcy Code § 1141 or the Plan.

### 8.    Miscellaneous

#### (a)    Retention of Jurisdiction

Consummation of the Plan consists of the occurrence of the Effective Date and payment of the Auction Proceeds pursuant to the terms and conditions of the Plan, which shall be made within ten days after entry of an order approving the Winning Bidder.  Pursuant to Article XII of the Plan, the Bankruptcy Court will continue to retain jurisdiction after Confirmation to resolve all outstanding matters in the Chapter 11 Case and with respect to the fulfillment of the obligations of the Reorganized Debtor under the Plan.

#### (b)    Establishment of Permanent Injunction

Provided that the Effective Date occurs, the entry of the Confirmation Order shall permanently enjoin all Persons that have held, currently hold, or may in the future hold a Claim or other debt or liability against the Estate from taking any of the following actions on account of such Claim:  (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtor, the Estate, or the Reorganized Debtor; (b) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, or the Reorganized Debtor; (c) creating, perfecting, or enforcing in any manner directly or indirectly, any lien, charge, or encumbrance of any kind against the Debtor, the Estate, or the Reorganized Debtor; and (d) proceeding in any manner in any place whatsoever against the Debtor, the Estate, or the Reorganized Debtor, funds, or reserves held or maintained by any of the aforementioned entities pursuant to the Plan, in any way that does not conform to, or comply, or is inconsistent with, the provisions of the Plan.

#### (c)    Re-vesting of Assets; No Further Supervision

The assets of the Debtor and all property of the Estate (excluding, however, all rights of the Debtor to recover property under §§ 542, 543, 550, and 553 of the Bankruptcy Code, all avoiding powers under §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, all proceeds thereof, and all claims and causes of action, cross-claims and counterclaims of any kind or nature whatsoever against third parties arising before the Confirmation Date that have not been disposed of prior to the Confirmation Date shall be preserved and re-vest in the Reorganized Debtor, in each case free and clear of all Claims, but subject to the obligations of the Reorganized Debtor as specifically set forth in the Plan.  The Plan does not contain any

restrictions or prohibitions on the conduct of the business of the Reorganized Debtor.  The Reorganized Debtor may use, operate and deal with its assets, and may conduct and change its business, without any supervision by the Bankruptcy Court or the Bankruptcy Administrator, and free of any restrictions imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Chapter 11 Cases.

### (d)      Release of Certain Claims and Actions

As of and on the Effective Date, the Debtor, its Estate, and all Persons or Entities who have held, hold, or may hold Claims against, or Interests in the Debtor and any of its successors, assigns, or representatives shall be deemed to have waived, released, and discharged all rights or claims, whether based upon tort, contract or otherwise, which they possessed or may possess prior to the Effective Date against the Debtor, its present and former directors, officers, employees, agents, representatives, and attorneys and any of their successors or assigns, except as otherwise provided for in the Plan (including the documents filed as Schedules to the Plan) or the Confirmation Order;

The Confirmation Order shall contain a permanent injunction to effectuate the releases granted in Article X of the Plan.

### (e)      Exculpation

Except as otherwise provided in the Plan, to the fullest extent permitted by § 1125(e) of the Bankruptcy Code, the Debtor, the Reorganized Debtor, and their respective present and former officers, directors, employees, representatives, counsel, or agents shall be deemed released by each of them against the other and by the holders of Claims and Interests and from any and all claims, obligations, rights, causes of action, and liabilities for any act or omission in connection with, or arising out of, the Chapter 11 Case, including, without limiting the generality of the foregoing, the Disclosure Statement, the pursuit and approval of the Disclosure Statement, the pursuit of Confirmation of the Plan, Consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and all such persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.

### (f)      Conditions Precedent to Confirmation of the Plan

The Plan shall not be confirmed unless and until the Bankruptcy Court has entered the Confirmation Order in a form and substance satisfactory to the Debtor.

### (g)      Conditions Precedent to Effective Date

The Plan shall not become effective and operative unless the Effective Date occurs.  The Effective Date shall occur at least fourteen (14) days after the Confirmation Order has been entered, without any modifications or alterations, and no stay of the Confirmation Order shall be in effect.

## ARTICLE IV
## CONFIRMATION OF THE PLAN

### A.    FEASIBILITY

Section 1129(a) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Reorganized Debtor or any successor to the Reorganized Debtor under the Plan. In this case, the Plan contemplates a reorganization of the Debtor's business, and the Debtor is confident that confirmation of the Plan will not likely be followed by the need for a further reorganization or liquidation of the Reorganized Debtor.

In addition, the Debtor is confident that there will be sufficient funds on hand to satisfy the minimum distributions required under § 1129(a)(9) of the Bankruptcy Code and the obligations of the Reorganized Debtor under the Plan.

### B.    ACCEPTANCE

As a condition to confirmation of the Plan, § 1129(a) of the Bankruptcy Code, with certain exceptions, requires that each impaired Class accept the Plan. In general, a class is "impaired" if the legal, equitable, or contractual rights attaching to the Claims or interests of that class are modified, other than by curing defaults and reinstating maturities or by payment in full in cash.

The Bankruptcy Code defines acceptance of a plan (a) by a class of creditors entitled to vote thereon as acceptance by holders of two-thirds in dollar amount and a majority in number of Allowed Claims in that class and (b) by a class of partnership holders entitled to vote thereon by acceptance of two-thirds in amount of such interests. Each calculation, however, includes only those holders of Allowed Claims and Interests who actually vote to accept or reject the Plan.

Pursuant to § 1126(f) of the Bankruptcy Code, classes of Claims and Interests that are not "impaired" under a plan are conclusively deemed to have accepted the Plan. Pursuant to § 1126(g) of the Bankruptcy Code, classes that receive no distributions under a plan are conclusively deemed to have rejected the Plan. For these reasons, acceptances of the Plan are being solicited from Classes 2, 5 and 7. Holders of Administrative Claims, the Class 2A Tax Claim, Allowed Priority Tax Claims and Other Priority Claims that are Allowed Claims will be paid to the extent required by the Bankruptcy Code on or about the Effective Date and are thus deemed to accept the Plan. The holders of the Allowed 12 Interest n Class 12 have consented to the Plan.

### C.    NON-ACCEPTANCE AND CRAMDOWN

If any Class of impaired Claims fails to accept the Plan, the Debtor will seek to effect a "cramdown" on such dissenting Class and all Classes that are junior to such dissenting Class under § 1129(b) of the Bankruptcy Code. The Debtor also reserves the right to amend the Plan and request the Bankruptcy Court to confirm the Plan as further amended. If an amendment or amendments to the Plan are material, the Debtor may have to re-solicit acceptances from any Class affected by the change(s), unless that Class can be deemed to have accepted or rejected the Plan.

The Plan's treatment of Classes 2 through 11 is consistent with the foregoing. Consequently, the Debtor believes that if any of the holders in these classes reject the Plan, the Plan may be confirmed over such opposition.

Pursuant to § 1129(b) of the Bankruptcy Code, the Debtor will seek Confirmation of the Plan, notwithstanding the possible rejection of the Plan by holders of Claims in any Class.

## D.    **BEST INTERESTS TEST – LIQUIDATION ANALYSIS**

Notwithstanding acceptance of the Plan in accordance with § 1126 of the Bankruptcy Code, the Court must find that each member of an impaired class of Claimants and each member of an impaired class of Interests holders has accepted the Plan, or will receive or retain property of a value, as of the Effective Date of the Plan, that is not less than the amount such creditor or interest holder would have received or retained if the Debtor's Estate was liquidated under Chapter 7 of the Bankruptcy Code.  The Debtor believes that the Plan complies with this "best interests" test.

As discussed below and demonstrated in Exhibit B to this Disclosure Statement, a conversion of the Chapter 11 Case to cases administered under Chapter 7 of the Bankruptcy Code, followed by a liquidation under Chapter 7, would engender higher expenses and risks than the reorganization contemplated by the Plan.  When coupled with the inevitable delay caused by the appointment of a Chapter 7 trustee and the retention of the trustee's professionals, distribution to holders of Allowed Claims that would otherwise be made on the Plan's Effective Date necessarily will be delayed for an indefinite period.

A conversion of the Chapter 11 Case to a case administered under Chapter 7 of the Bankruptcy Code would require the appointment of a trustee to conduct the liquidation of the Debtor's Estate.  Such a trustee would likely have limited historical experience or knowledge of the Chapter 11 Case or of the Debtor's records, assets, or former business.  The fees charged by a Chapter 7 trustee and any professionals hired by the Chapter 7 trustee could impose additional administrative costs on the Debtor's Estate that will not be incurred under the Plan and which will be paid ahead of Allowed Administrative, Priority Tax, and Other Priority Claims.

The liquidation analysis attached as Exhibit B to this Disclosure Statement reveals that confirmation of the Plan is preferable to liquidating cases under Chapter 7 of the Bankruptcy Code because creditors will receive more under the Plan than they would receive in a Chapter 7 liquidation by preserving the going-concern value of the Debtor and its assets.  Further, conversion of the case to a later Chapter 7 case would necessarily occasion substantial delay associated with the trustee and its professionals educating themselves as to the particularities of the Debtor's Estate.  The Plan, in contrast, provides an efficient mechanism for prompt and subsequent periodic distributions to holders of Allowed Claims that would not exist in a Chapter 7 liquidation.  Consequently, the value of the liquidation proceeds would be further reduced by the time value of money.

Accordingly, for all the foregoing reasons, the Debtor believes that the Plan is in the best interests of the Claimants and fully complies with the statutory requirements of the Bankruptcy Code.

## ARTICLE V
## MATERIAL UNCERTAINTIES AND RISK FACTORS

**HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS SET FORTH BELOW, AS WELL AS OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN). THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.**

### A.    CERTAIN DISPUTED CLAIMS

The feasibility of the Plan is predicated upon the levels of Administrative and Priority Claims not being materially in excess of the amounts estimated herein. If such claims are substantially in excess of the estimated amounts, the Reorganized Debtor's ability to satisfy their payment obligations under the Plan could be impacted. Moreover, the stated amounts of claims in each Class listed above are merely estimates based on the current claims register published by the Clerk of the Bankruptcy Court. All amounts are subject to change upon the completion of the claims review and objection process by the Reorganized Debtor.

### B.    CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

As more fully discussed herein, if certain conditions precedent to Confirmation and the Effective Date have not been satisfied, the Plan may be withdrawn and the Confirmation Order shall be vacated.

### C.    CERTAIN TAX MATTERS

Implementation of the Plan may have material federal income tax consequences to the Debtor and holders of Claims and Interests.

**THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS AND INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN ARE UNCERTAIN DUE TO THE LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE APPLICABLE TAX LAW. NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE IRS WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED FROM THE IRS WITH RESPECT THERETO. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.**

## ARTICLE VI
## CONCLUSION

**FOR ALL OF THE REASONS SET FORTH IN THIS DISCLOSURE STATEMENT, THE DEBTOR BELIEVES THAT THE CONFIRMATION AND CONSUMMATION OF THE PLAN IS PREFERABLE TO ALL OTHER**

**ALTERNATIVES. THE DEBTOR THUS URGES ALL CLAIMANTS ENTITLED TO VOTE TO ACCEPT THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR BALLOTS SO THAT THEY WILL BE RECEIVED BY _____, 2015 AT ___ P.M.**

Dated: Memphis, Tennessee
         January 14, 2015

                        Respectfully submitted,

                        WORLEY BROTHERS SCRAP IRON & METAL, INC.

                        By: _/s/Johnny Worley (w/permission snd)
                             Johnny Worley
                        Its:    President

                             /s/Steven N. Douglass
                             Steven N. Douglass (#09770)
                             Harris Shelton Hanover Walsh, PLLC
                             40 S. Main Street, Suite 2700
                             Memphis, Tennessee 38103
                             901.525.1455
                             sdouglass@harrisshelton.com

                             *Attorney for Debtor and Debtor-in-Possession*

LIST OF EXHIBITS TO DISCLOSURE STATEMENT

Exhibit A          Plan of Reorganization (with attached Schedules)
Exhibit B          Liquidation Analysis
Exhibit C          Historical Financial Data